**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT/
APPELLEE MENARD, INC.:

**KEVIN C. TYRA**
**ELIZABETH H. STEELE**
The Tyra Law Firm, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLANT
BLUE LINE LP, INC.:

**SCOTT L. BARNHART**
Keffer Barnhart, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLANT
ARTHUR BARNARD, III:

**ADAM LENKOWSKY**
Roberts & Bishop
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
CAPITOL SPECIALTY:

**SCOTT A. HARKNESS**
**CYNTHIA E. LASHER**
Norris Choplin Schroeder LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ARTHUR BARNARD III, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1407-CT-486 |
| | ) | |
| MENARD, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |
| | ) | |
| | ) | |

MENARD, INC., and BLUE LINE LP, INC., )
)
    Appellants-Third-Party-Plaintiffs, )
)
           vs. )
)
CAPITOL SPECIALTY INSURANCE CORP., )
)
    Appellee-Third-Party-Defendant. )

---

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-1110-CT-39154

---

**January 22, 2015**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Arthur Barnard was allegedly physically attacked by a Blue Line loss prevention officer outside a Menard store. The loss prevention officer suspected that Barnard had stolen something from the store. Barnard was injured and incurred medical expenses as a result of the incident. He filed a complaint against Menard and Blue Line, and Menard and Blue Line later filed third-party complaints against their insurer, Capitol Specialty Insurance Corporation (Capitol), invoking the insurer's duties to defend and indemnify. The trial court granted summary judgment in favor of Menard on Barnard's complaint and in favor of Capitol on the third-party complaints.

We find no error in the summary judgment order in favor of Menard on Barnard's complaint. With respect to the third-party complaints against Capitol, we find that it was

2

erroneous to grant summary judgment in favor of Capitol and that, instead, summary judgment should have been entered in favor of Menard and Blue Line with respect to Capitol's duty to defend. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

On March 18, 2010, Barnard went to a Menard's store located at 7140 South Emerson Avenue in Indianapolis. Barnard had just been released by a hospital following surgery. After shopping, Barnard and his fiancée purchased certain items and exited the store. As they headed for their van in the parking lot, a loss prevention officer allegedly grabbed Barnard by the arm, slammed him into the van, and threw him on the ground. The loss prevention officer then forced Barnard back into the store, accusing Barnard of stealing a hasp worth $1.99. Barnard claims that he was detained in the store for an unreasonable amount of time, that he was slandered, and that he was injured as a result of the incident.

The loss prevention officer is employed by Blue Line, which contracted with Menard to provide security services. The Contract provides that Blue Line's primary duties include the prevention of "the loss of merchandise, property and shoplifter apprehension." Barnard App. p. 56. The Contract further stipulates that "[n]othing in this Agreement shall be construed in any manner to create an agency or employer-employee relationship between Menards and [Blue Line], and it is expressly understood, acknowledged and agreed that [Blue Line] is an independent contractor." Id. at 57.

3

Finally, the Contract requires that Blue Line shall "defend, indemnify and hold harmless Menards, its agents and its employees from any liability, damages, expenses, claims, demands, actions or causes of action, including attorney fees, arising out of the work hereunder . . . ." Id. at 58.

Blue Line is insured by Capitol, and Menard is listed as an additional insured on the relevant policy (the Policy). The Policy provides that Capitol has a duty to defend Blue Line and Menard against any lawsuit seeking damages for bodily injury, property damage, and personal and advertising injury. "Personal and advertising injury" is defined as "false arrest, detention, or imprisonment," and "[o]ral or written publication in any manner . . . that slanders or libels a person . . . ." Menard App. p. 80. The Policy also, however, has an endorsement excluding coverage for assault and battery.

On January 31, 2012, Barnard filed an amended complaint against Menard and Blue Line.[1] In the complaint, Barnard sought damages based on the following grounds:

16. That the Defendants were negligent and as a direct and proximate result of carelessness and negligence of the Defendants, Plaintiff was injured.

17. The Defendants, and each of them, were reckless and negligent, including but [not] limited to the following ways:

a. The employee and/or agent used excessive force in detaining Plaintiff. The manager of Defendant's store failed to obtain immediate medical care for the Plaintiff all in reckless disregard of Plaintiff's injuries.

---

[1] Barnard originally filed a pro se complaint on October 7, 2011. He subsequently hired an attorney and filed the amended complaint by counsel.

b.    Defendants violated Indiana statutory law by illegally detaining Plaintiff for a period in excess of that allowed by statute.

c.    The use of unnecessary excessive force upon the person of the Plaintiff.

d.    Plaintiff was battered by Menard's employee and/or agent.

18.    That Plaintiff was required to employ medical professionals to treat his physical and psychological injuries[,] incurred medical expenses for the treatment of his injuries and sustained great pain and suffering.

Barnard App. p. 22. In November 2012, Menard and Blue Line each filed a third-party complaint against Capitol, seeking to enforce the duty to defend and indemnify included in the Policy.

On December 10, 2013, Menard filed a motion for summary judgment on Barnard's complaint. Menard contended that because Blue Line was an independent contractor, Menard owed no duty of care to Barnard. The trial court granted Menard's summary judgment motion on June 12, 2014, finding as follows:

> The actions allegedly taken by [Blue Line's] loss-prevention officer were not reasonably foreseeable by Menard, so Menard did not breach any duty owed to [Barnard] as a business invitee on the premises and [Blue Line] was an independent contractor of Menard as a matter of law, and a principal is not liable for the negligence of its independent contractors.

Id. at 14.[2] Barnard now appeals.

---

[2] Menard had also filed a cross-claim against Blue Line, and the trial court ordered that summary judgment on that cross-claim be entered in Menard's favor, directing that Blue Line "shall defend, indemnify and hold harmless" Menard for the claims in Barnard's complaint. Barnard App. p. 15. Blue Line has not appealed that order.

With respect to Menard's and Blue Line's third-party complaints against Capitol, Menard, Blue Line, and Capitol each filed cross-motions for summary judgment. Capitol argued that the Assault and Battery Exclusion excuse it from having to defend and indemnify either Menard or Blue Line. The trial court granted Capitol's summary judgment motion on June 12, 2014, finding as follows:

> The Court finds the designated evidence shows all claims arise out of and/or relate to an assault or battery and that no other party has designated any facts to the contrary. The Court further finds that [the assault and battery exclusion] expressly and unambiguously states that Capitol has no duty to defend or indemnify any insured against any claim or suit for injury arising out of or relating to an assault or battery.

Menard App. p. 430. Consequently, the trial court denied Menard's and Blue Line's motions for summary judgment and entered a declaratory judgment that Capitol owed no coverage to Menard, Blue Line, or Barnard. Menard and Blue Line now appeal.

## DISCUSSION AND DECISION

We apply a de novo standard of review to a trial court's order granting or denying summary judgment. Alldredge v. Good Samaritan Home, Inc., 9 N.E.3d 1257, 1259 (Ind. 2014). Therefore, we apply the same standard as the trial court: summary judgment is appropriate only where the movant demonstrates there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Id. We resolve all questions and view all evidence in the light most favorable to the non-movant, so as to not improperly deny him his day in court. Id.

6

## I.  Barnard vs. Menard

Barnard argues that the trial court erroneously concluded that Menard had no enforceable duty to Barnard.  First, Barnard argues that Menard owed him a general duty of reasonable care as a business invitee.  Second, Barnard argues that Blue Line was an employee, rather than an independent contractor, of Menard, such that liability attaches to Menard via the doctrine of respondeat superior.  Finally, Barnard contends that even if Blue Line was merely an independent contractor, Menard had a duty to protect Barnard from the harm caused by an independent contractor.

### A.  Duty of Reasonable Care

First, Barnard argues that Menard owed a duty of reasonable care to him as a business invitee.  Menard concedes that it owes a duty of care to all of its business invitees.  And indeed, it is well established that "'[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct.'"  Paragon Family Restaurant v. Bartolini, 799 N.E.2d 1048, 1052 (Ind. 2003) (quoting Muex v. Hindel Bowling Lanes, Inc., 596 N.E.2d 263, 266 (Ind. Ct. App. 1992)).  This duty of care, however, "only extends to harm from the conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor."  Id.  Menard contends that the conduct of the Blue Line loss prevention officer in this case was not reasonably foreseeable.  Therefore, Menard

7

contends that the duty of care it owed to Barnard did not extend to harm caused by the loss prevention officer.

The foreseeability component of duty (as opposed to the foreseeability component of proximate cause) "requires a . . . general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." Goldsberry v. Grubbs, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996). In determining the question of Menard's duty, therefore, we will not consider the specific facts of Barnard's case. As a general matter, we do not believe that it is reasonably foreseeable to a business entity that an independently contracted loss prevention officer would physically attack a customer, causing injury to that customer.

To the extent that Barnard contends that the specific facts herein are relevant, we merely note that the only evidence in the record regarding Blue Line's previous history with Menard establishes that "[o]ther than this incident, there has never been an injury to a patron requiring medical treatment as a result of a Blue Line [] employee's actions at this or any other Menard location." Barnard App. p. 150. Therefore, the undisputed evidence in the record would lead us to the same conclusion. As a matter of law, therefore, we find that Menard's general duty of care owed to Barnard did not extend to the actions of Blue Line's loss prevention officer.

### B. Respondeat Superior

Barnard next argues that Menard is liable under the doctrine of respondeat superior. Under that doctrine, liability may be imposed on an employer for acts

committed by an employee that are within his scope of employment. Barnett v. Clark, 889 N.E.2d 281, 283 (Ind. 2008). Generally, a principal is not liable for the acts of independent contractors. Gwinn v. Harry J. Kloeppel & Assocs., Inc., 9 N.E.3d 687, 691 (Ind. Ct. App. 2014). The rationale behind this rule is that a "'general contractor typically exercises little, if any, control over the means or manner of the work of its subcontractors, and requires only that the completed work meet the specifications of the owner in its contract with the general contractor.'" Shawnee Constr. & Eng'g, Inc. v. Stanley, 962 N.E.2d 76, 81 (Ind. Ct. App. 2011) (quoting Harris v. Kettelhut Constr., Inc., 468 N.E.2d 1069, 1072 (Ind. Ct. App. 1984)).

Whether one acts as an employee or an independent contractor is generally a question of fact, but if the underlying facts are undisputed, then the court may properly determine a worker's—or corporate entity's—classification as a matter of law. Moberly v. Day, 757 N.E.2d 1007, 1009 (Ind. 2001). Here, the underlying facts regarding the nature of the business relationship between Menard and Blue Line are undisputed.

To distinguish between employees and independent contractors, we apply a ten-factor analysis:

"(a)    the extent of control which, by the agreement, the master may exercise over the details of the work;

(b)    whether or not the one employed is engaged in a distinct occupation or business;

(c)    the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

9

(d)     the skill required in the particular occupation;

(e)     whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f)     the length of time for which the person is employed;

(g)     the method of payment, whether by the time or by the job;

(h)     whether or not the work is a part of the regular business of the employer;

(i)     whether or not the parties believe they are creating the relation of master and servant; and

(j)     whether the principal is or is not in business."

Id. at 1010 (quoting Restatement (Second) of Agency § 220(2) (1958)). We consider all factors, and no single factor is dispositive. Id.

### 1. Extent of Control Over Details of the Work

As our Supreme Court has observed, an employee is defined as one "'employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.'" Id. (quoting Restatement (Second) of Agency § 220(1) (1958)). Here, the record reveals that Blue Line was in charge of the manner in which its work was to be done, unless Menard notified Blue Line in writing or orally. If Menard notified Blue Line of new requirements, Blue Line would have twenty-four hours to meet those new requirements. Barnard App. p. 56. Formal notification and a twenty-four-hour time period in which to make changes is more consistent with an independent contractor classification than an employee classification. Moreover, Menard only has the right to request changes in what

10

Blue Line was responsible for doing, not in <u>how</u> those responsibilities were to be carried out. All of these rights are more analogous to that of an independent contractor than that of an employee. Therefore, we find that this factor weighs in favor of an independent contractor classification.

### 2 and 3. Distinct Occupation or Business, Kind of Occupation

No evidence was presented regarding these factors.

### 4. Skill Required

This factor relates to a general assumption that "[u]nskilled labor is usually performed by employees, while skilled labor is often performed by independent contractors." <u>Walker v. Martin</u>, 887 N.E.2d 125, 132 (Ind. Ct. App. 2008). Here, the Contract refers to training and establishes Blue Line as an expert in loss prevention:

> [Blue Line] warrants that any of its employees furnished to Menards pursuant to this contract . . . shall have been duly trained by [Blue Line] and known by [Blue Line] to perform the services of a loss prevention officer in a professional manner adequate in the occupational community but of no less quality and standards that are generally in existence in the industry. [Blue Line] is the expert in this field and Menards is relying upon [Blue Line's] expertise to provide competent service and to follow the law of the state in which the services are being performed.

<u>Id.</u> at 57. We find that this factor weighs in favor of an independent contractor classification.

### 5. Supplier of Equipment, Tools, and Work Location

Our Supreme Court notes that "it is particularly significant if an employer provides tools or instrumentalities of substantial value, and the same would presumably

11

be true if the workman is the provider." Moberly, 757 N.E.2d at 1012. Here, the record reveals that aside from the workplace itself, Menard did not supply any materials to Blue Line. In other words, Blue Line supplied the uniforms as well as whatever accessories the loss prevention officers required. Neither provided tools or instrumentalities of substantial value. We find that this factor is neutral.

### 6. Length of Employment

"[A] long-term relationship can indicate employee status . . . [especially] 'employment over a considerable period of time with regular hours.'" Id. (quoting Restatement (Second) of Agency § 220(2)). Here, the Contract had been in place since 2007, there was no end date, and the loss prevention services were provided by Blue Line on a regular and consistent basis. We find that this factor weighs in favor of an employee classification.

### 7. Method of Payment

"Sporadic payments in lump sum amounts for each job performed, instead of payments by the hour or on a weekly basis are more typical of an independent contractor than an employee." Walker, 887 N.E.2d at 133. Here, the Contract provided that Menard would pay Blue Line by the hour for the work done by the loss prevention officers. This factor weighs in favor of an employee classification.

### 8. Regular Business of Employer

This factor considers whether or not the work at issue is a part of the regular business of the employer. Moberly, 757 N.E.2d at 1010. Here, Blue Line provided

12

security services at Menard's stores, while Menard itself was in the business of selling home improvement products. Security is distinct from sales, but is a necessary part of the sales business. Consequently, this factor is neutral. See Guillaume v. Hall Farms, Inc., 914 N.E.2d 784, 790 (Ind. Ct. App. 2009) (finding that a company in the business of buying and distributing melons did not engage in the business of harvesting melons but that harvesting was a necessary part of its business, concluding that this factor was neutral in the independent contractor/employee analysis).

### 9. Belief of the Parties

It is undisputed that Blue Line and Menard believed that they had an independent contractor relationship. The Contract explicitly states as much. Consequently, this factor weighs in favor of an independent contractor classification.

### 10. Whether the Principal is in Business

It is undisputed that Menard is a business that sells home improvement products. This factor favors an employee classification.

Our Supreme Court notes that the "leading factor" in this analysis is the first factor—control. Moberly, 757 N.E.2d at 1013. Here, this factor weighs in favor of an independent contractor classification. Of the remaining factors, two weigh in favor of an independent contractor classification, three weigh in favor of an employee classification, and four are neutral or without evidentiary support in the record. While this is undeniably a close call, we find that the facts in the record support the trial court's

13

conclusion that Blue Line was an independent contractor. Consequently, liability does not attach to Menard via the doctrine of respondeat superior.

## C. Duty to Protect From Independent Contractor

Finally, Barnard argues that even if Blue Line was an independent contractor, Menard still owed him a duty to protect him from the actions of Blue Line employees. There are five circumstances in which a principle can be liable for the negligence of an independent contractor: (1) where the contract requires the performance of inherently dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act creates a nuisance; (4) where the act will probably cause injury to others unless due precaution is taken; and (5) where the act is illegal. Bagley v. Insight Commc'ns Co., 658 N.E.2d 584, 586 (Ind. 1995).

On appeal, Barnard argues that the fourth exception applies. This argument, however, circles back to the foreseeability issue we considered above. See id. at 588 (noting that "[t]he essence of this exception is the foreseeability of the peculiar risk involved in the work and of the need for special precautions"). As this Court has explained, under this exception, "liability is established only when, at the time of contracting, the employer should have foreseen that injury to others was 'likely to happen.'" Red Roof Inns, Inc. v. Purvis, 691 N.E.2d 1341, 1345-46 (Ind. Ct. App. 1999).

We have already found herein that as a general matter, we do not believe that it is reasonably foreseeable to a business entity that an independently contracted loss prevention officer would physically attack a customer, causing injury to that customer.

14

And in this context, the standard is even more rigorous: "[t]he contractee of an independent contractor may always anticipate that if the contractor is negligent toward third persons, some harm to those persons may result. More than the possibility of harm, however, is required; a plaintiff must show a probability of such harm." McDaniel v. Business Inv. Group, Ltd., 709 N.E.2d 17, 22 (Ind. Ct. App. 1999) (internal citations omitted) (emphases original). As noted above, the only evidence in the record specific to Blue Line establishes that prior to this incident, there were no incidents between a Blue Line employee and a Menard patron causing injury to the patron that required medical treatment. Under these circumstances, we do not find any applicable exception to the general rule that a principal is not liable for the negligence of its independent contractors.[3] Consequently, we affirm the trial court's order granting summary judgment in favor of Menard on Barnard's claims against it.

## II. Menard and Blue Line vs. Capitol

Next, Menard and Blue Line argue that the trial court erred by granting summary judgment in favor of Capitol on their respective third-party complaints against Capitol. The trial court found that the Policy's assault and battery exclusion applies such that Capitol does not owe a duty to defend and/or indemnify either Menard or Blue Line for this incident.

---

[3] Barnard directs our attention to an Ohio case involving armed security guards. Pusey v. Bator, 762 N.E.2d 968, 974 (Ohio 2002). We find that case factually distinguishable, inasmuch as there is no evidence whatsoever showing that the Blue Line loss prevention officers are armed. The addition of a firearm to the equation could potentially alter our analysis, but here, there is no evidence suggesting that firearms were involved. Therefore, this argument is unavailing.

When the language of an insurance contract is clear and unambiguous, it should be given its plain and ordinary meaning. Eli Lilly & Co. v. Home Ins. Co., 482 N.E.2d 467, 470 (Ind. 1985). An ambiguity—where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning—is construed strictly against the insurer. Bosecker v. Westfield Ins. Co., 724 N.E.2d 241, 244 (Ind. 2000). The failure to define a term in an insurance policy does not necessarily render it ambiguous. Wagner v. Yates, 912 N.E.2d 805, 810 (Ind. 2009).

The Policy's assault and battery exclusion reads as follows:

We have no duty to defend or indemnify any insured or any other person against any claim or "suit" for "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of or related to any:

A. Assault and/or battery committed by any insured, any employee of any insured or any other person, whether or not caused by or at the direction of any insured, or arising because of the negligence of any insured; or

B. Assault and/or battery resulting from the negligent hiring, retention, training, supervision or control of any employee of the insured; or

C. The failure to prevent or suppress an assault and battery by any person; or

D. The failure to provide an environment safe from assault and battery, including but not limited to the failure to maintain security; or

E. The use of force to protect persons or property.

We have no duty to defend any insured concerning any claim falling within the provisions of this exclusion.

For the purposes of this exclusion, assault and/or battery includes any physical altercation.

16

Id. at 94.

First, Menard and Blue Line argue that the Policy is ambiguous because it does not define "physical altercation." We cannot agree with this assertion. Initially, we note that the Policy does not imply that "physical altercation" is an all-inclusive definition of assault and/or battery. Instead, "physical altercation" is merely included within the terms "assault and/or battery." What we must determine, therefore, is whether "assault and/or battery" is ambiguous. We find that it is not. Both of these terms are frequently and readily used in a legal context. Specifically relevant in this case is the term "battery," which is defined consistently in case law, the Restatement (Second) of Torts, and Black's Law Dictionary. Across the board, "battery" is defined as an intentional and offensive touching of another person. See, e.g., Everhart v. Founders Ins. Co., 993 N.E.2d 1170, 1175 (Ind. Ct. App. 2013); Restatement (Second) of Torts § 13 (1965); Black's Law Dictionary 146 (7th ed. 1999).

In this case, Barnard provides the following description of part of the incident with the Blue Line loss prevention officer:

> The security guard grabbed me by my arm, slung me around after slamming me onto my van, and then threw me on the ground with his forearm to my throat . . . . He then wrapped me up and forced me into the store where we were waiting for the manager.

Menard App. p. 34. Whether or not this constituted a physical altercation, it clearly constituted a battery within the widely-accepted definition of the term. We decline to find the assault and battery exclusion ambiguous.

17

That conclusion, however, does not end our inquiry. In his complaint, Barnard raises one count of negligence, with several alternate theories of liability:

11. After being confined and taken back in the store, Plaintiff was slandered and falsely accused of the theft of a bright brass hasp valued at One Dollar and Ninety-Nine Cents ($1.99).

\*\*\*

17. The Defendants, and each of them, were reckless and negligent, including but [not] limited to the following ways:

   a. The employee and/or agent used excessive force in detaining Plaintiff. The manager of Defendant's store failed to obtain immediate medical care for the Plaintiff all in reckless disregard of Plaintiff's injuries.

   b. Defendants violated Indiana statutory law by illegally detaining Plaintiff for a period in excess of that allowed by statute.

   c. The use of unnecessary excessive force upon the person of the Plaintiff.

   d. Plaintiff was battered by Menard's employee and/or agent.

Menard App. p. 10. While Capitol does not have the duty to defend or indemnify Menard or Blue Line with respect to the allegations of battery, there is no such exclusion applied to his claims of false imprisonment or slander.

Regarding Capitol's duty to defend, it is well established that "an insurer's duty to defend its insured is broader than its duty to indemnify." Liberty Mut. Ins. Co. v. OSI Indus., Inc., 831 N.E.2d 192, 198 (Ind. Ct. App. 2005). We will "determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation." Id. If a claim is

18

clearly excluded under the policy, then no defense is required, but "[t]here is no question that if the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed . . . ." Transamerica Ins. Servs. v. Kopko, 570 N.E.2d 1283, 1285 (Ind. 1991).

In this case, the Policy is "otherwise applicable" apart from the battery. We do not agree with Capitol's assertion that the entire incident "arose out of" or was "related to" the battery. What occurred inside the store was separate from and unrelated to what occurred outside in the parking lot. In other words, we do not find this to be one continuous, ongoing incident that is categorically excluded from coverage. Because the Policy applies to Barnard's allegations related to false imprisonment and slander, we find that Capitol has the duty to defend Menard and Blue Line. Whether Capitol is responsible for a portion of the damages, if any, will have to be determined at a later date. We find that it was error to grant summary judgment and a declaratory judgment to Capitol. Instead, summary judgment on the issue of duty to defend should have been granted to Menard and Blue Line.

Capitol argues that regardless of the battery exclusion, all of the conduct herein is excluded because it stems from "[t]he use of force to protect persons or property," which is another excluded category of events. Menard App. p. 94. At the risk of stating the obvious, Blue Line provides loss prevention services. The sole purpose of Blue Line's business—for which Menard contracted, and which Capitol insured—is to protect the store's property. To interpret this provision in the way suggested by Capitol would

19

render the entirety of the Policy illusory. Inasmuch as illusory insurance contracts are against public policy, we decline to apply the provision as suggested by Capitol. See Meridian Mut. Ins. Co. v. Richie, 544 N.E.2d 488, 489 (Ind. 1989) (holding that if an insured could not have benefited from his insurance coverage under any set of circumstances, the policy is illusory and in violation of public policy).

Finally, Capitol argues that the specific Menard location at issue in this incident was not covered by the Policy. The Policy lists Menard, Inc., as an additional insured party. Menard App. p. 221. On the Additional Interest Schedule, it lists the address of Menard as its corporate headquarters in Eau Claire, Wisconsin. Id. On the Additional Insured Endorsement, the Policy refers to the Additional Interest Schedule and lists the location of covered operations as 2302 East Troy Street, Indianapolis. Id. at 249. The East Troy Street address is Blue Line's address. According to Capitol, the East Troy address is the only location covered by the Policy.

We cannot countenance such an overly narrow interpretation of an insurance policy. The Policy states that Blue Line is covered for "security guard service at Menards stores." Id. at 211 (emphasis added). This language, as well as the contract as a whole, clearly indicates that the intent behind the Policy was to provide coverage to Blue Line employees who are working at any and all Menard stores. That the Policy notes only the Blue Line address as a covered premises is, at most, an inadvertent error, and at least, a way to use shorthand and avoid listing each and every Menard store. We decline to find

20

that the Policy applies only to one singular Menard location, as such an interpretation would, again, render the Policy virtually illusory.

## CONCLUSION

In sum, we find as follows: (1) the trial court did not err by granting summary judgment in favor of Menard on Barnard's claims against it; (2) it was error to grant summary judgment and a declaratory judgment in favor of Capitol on Menard's and Blue Line's third-party complaints against it; and (3) summary judgment should have been granted in favor of Menard and Blue Line on the issue of Capitol's duty to defend, and Menard and Blue Line are entitled to reimbursement for the defense costs they have incurred since the date they tendered the defense to Capitol.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

MAY, J., and BARNES, J., concur.