# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 03 2019, 5:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR
APPELLANT/CROSS-APPELLEE

James M. Lewis
Michael J. Hays
Tuesley Hall Konopa LLP
South Bend, Indiana

ATTORNEY FOR
APPELLEE/CROSS-APPELLANT

Timothy J. Maher
Barnes & Thornburg LLP
South Bend, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Scott David Hurwich 1986 Irrevocable Trust;

Scott D. Hurwich,

*Appellant/Cross-Appellee-Plaintiff,*

v.

Stacey MacDonald,

*Appellee/Cross-Appellant-Defendant.*

July 3, 2019

Court of Appeals Case No.
18A-TR-2906

Appeal from the St. Joseph Probate Court

The Honorable Steven L. Hostetler, Special Judge

Trial Court Cause No.
71D07-1410-TR-16

**Najam, Judge.**

# Statement of the Case

Scott D. Hurwich is the settlor and sole beneficiary of the Scott David Hurwich 1986 Irrevocable Trust ("the Trust"). In 2014, Scott filed a complaint in which he alleged that Stacey R. MacDonald, the former trustee of the Trust, had breached her fiduciary duty to Scott. Stacey filed a counterclaim in which she alleged that Scott had received compensation in the amount of $10,000 for timber that had been removed from Stacey's property. Following a hearing, the probate court found in favor of Stacey on most of Scott's claims. However, the court found that Stacey had wrongfully used funds from the Trust to pay two nontrust expenses, so the court ordered Stacey to pay Scott $416.67. The probate court also found for Stacey on her counterclaim and ordered Scott to pay Stacey $10,000 for the timber taken from Stacey's property. The probate court denied both parties' requests for attorneys' fees.

Scott now appeals and raises four issues for our review, which we revise and restate as follows:

1. Whether the probate court erred when it concluded that Stacey's legal fees were reasonable Trust expenses.

2. Whether the probate court erred when it determined that Stacey had substantially complied with the statutory requirement for her to deliver Trust accountings to Scott.

3. Whether the probate court erred when it denied his request for attorneys' fees.

4. Whether the probate court erred when it found in favor of Stacey on her counterclaim.

Additionally, Stacey raises the following issue for our review:

5. Whether the probate court erred when it denied her request for attorneys' fees.

We affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

Scott created the Trust in 1986, and he is the only beneficiary. Scott has two siblings, Jeff Hurwich and Stacey, who each have their own trust. Jeff, Stacey, and Scott jointly owned seventeen properties located across the country. Some of the properties were owned in equal shares by the three trusts, and some were jointly owned by the three individuals.

Stacey began serving as Trustee of the Trust in 2004. While she was the Trustee, Stacey had control over investment accounts that contained stocks and other liquid Trust assets. Those investment accounts were managed by John A. Siberell & Company ("Siberell"). Siberell also managed the liquid assets of Jeff's and Stacey's trusts. Stacey would periodically transfer an equal amount of funds from all three trust accounts at Siberell into a bank account at KeyBank that Stacey controlled. Stacey then used the funds in the KeyBank account to manage the assets that were jointly owned. Stacey also served as Trustee of Jeff's trust for some period of time.

[6]     After a dispute arose between Jeff and Stacey regarding how Stacey was handling Jeff's trust, Scott became concerned with how Stacey was handling the Trust. Scott attempted to talk to Stacey, but Stacey did not address his concerns. Scott was also unable to get a Trust accounting from Stacey. Accordingly, on October 12, 2012, Scott removed Stacey as Trustee.

[7]     In 2013, a dispute arose between the three siblings in relation to their real estate holdings. On April 9, Scott, Jeff, and Stacey entered into a mediated settlement agreement. Pursuant to that agreement, the three individuals partitioned the properties. Additionally, on June 3, 2014, Stacey became the sole owner of a property on Adams Road in St. Joseph County, Indiana. That property bordered a property on Primrose Lane that is owned by Scott. On June 16, Scott entered into two contracts with U.S. Timber & Veneer ("U.S. Timber"). One contract provided that U.S. Timber would harvest timber from Scott's property on Primrose Lane in exchange for $6,000, and the other provided that U.S. Timber would pay Scott $4,000 in exchange for timber from another property. However, U.S. Timber did not harvest any trees at that time.

[8]     On October 2, Scott filed a complaint against Stacey. In relevant part, Scott asserted that Stacey had breached her fiduciary duty to Scott. Specifically, Scott alleged that Stacey had used funds from the Trust to pay for personal expenses and that she had refused to provide an accounting of the Trust at any time while she was the Trustee. Accordingly, Scott asked the probate court to order Stacey to deliver an accounting of the Trust to him and to award him damages, including costs and attorneys' fees. In response, Stacey filed a motion

to dismiss pursuant to Indiana Trial Rule 12(B)(6). The probate court granted Stacey's motion and dismissed Scott's complaint. Scott appealed.

[9] Meanwhile, on April 7, 2015, Stacey's husband, Terry MacDonald, received a phone call alerting him that there were people logging trees on Stacey's property on Adams Road. Terry then went to the Adams Road property, but by the time he had arrived, the people were gone. Terry was able to see that "sap was running on the stumps and the tree tops," which indicated that the trees had been "freshly cut." Tr. Vol. II at 123. Terry later learned that U.S. Timber had removed the trees.[1] Accordingly, Terry contacted U.S. Timber, and U.S. Timber provided Terry with a copy of a check for $10,000 that they had paid to Scott.

[10] On August 25, 2016, this Court held that the probate court had erred when it dismissed Scott's complaint against Stacey and reversed the judgment of the probate court. *See Hurwich v. MacDonald (In re Hurwich Trust)*, 59 N.E.3d 977, 984 (Ind. Ct. App. 2016). Accordingly, the probate court reinstated Scott's complaint. Stacey then filed her answer. In her answer, Stacey denied the allegations, and, as an affirmative defense, she asserted that Scott's claims were barred by a two-year statute of limitations. Stacey also filed a counterclaim

---

[1] Scott asserts that, when Terry testified at the ensuing trial as to who had cut the trees on Stacey's property, the court sustained Scott's hearsay objection. Scott is correct that the probate court sustained his objection when Terry first attempted to testify that his neighbor had told him who had removed the trees from his property. However, Stacey's counsel rephrased the question and again asked Scott who had removed the trees. At that point, Scott again objected, but the probate court stated that Scott could question Terry about his personal knowledge and, in effect, overruled the objection.

against Scott in which she asserted that Scott had committed conversion when he accepted payment for timber that had been harvested from her property.

[11] The probate court held a hearing on October 2, 2018. Prior to the hearing, Scott and Stacey stipulated to the admission of the exhibits. Those exhibits included copies of some of the bank statements from the KeyBank account and copies of invoices from Stacey's attorneys. During the hearing, Stacey testified that she had never prepared a Trust statement for Scott while she was Trustee. However, she testified that Siberell generated monthly statements that listed the Trust assets and their gains and losses and that they prepared a year-end summary each year. She also testified that she had hired Crowe Chizek ("Crowe") to prepare an annual accounting of the Trust for tax purposes, which Crowe did every year that Stacey was Trustee of the Trust. Stacey further testified that she believed that Scott had received the reports from Siberell and Crowe every year.

[12] Scott then questioned Stacey about the invoices from her attorneys. Stacey testified that the invoices were for work her attorneys had done for her between September of 2011 and November of 2013 and that she had paid those invoices from the KeyBank account. Stacey further testified that, in addition to the current legal dispute between her and Scott, she had previously been involved in other legal proceedings with family members. Scott attempted to ask Stacey about the scope of the work that the invoices covered, but Stacey's attorney objected to the question as the description of the work provided by the attorneys had been redacted on all of the invoices.

[13] Scott also testified at the hearing. He testified that, when he contracted for U.S. Timber to harvest trees from his property, he never authorized anyone to enter onto Stacey's property. He further testified that he had previously had his property surveyed and that the surveyor had marked the boundaries of his property with orange flags. He also testified that he had informed U.S. Timber that the orange flags marked the boundary to his property.

[14] Following the hearing, the parties each submitted post-trial briefs. Thereafter, the probate court issued findings of fact and conclusions thereon. As to Scott's claims, the court found that "Stacey did not directly or indirectly steal, misappropriate, misuse, or improperly receive, retain, or apply any of Scott's assets or any assets of the Trust." Appellant's App. Vol. II at 11. However, the probate court did find that Stacey had wrongfully paid $750 for Terry's real estate taxes and $500 for hay for her horses out of the KeyBank account. Accordingly, the probate court found that Scott "is entitled to recover from Stacey one-third . . . of the total of those two amounts, or $416.67." *Id*. As for Scott's claim that Stacey had wrongfully used funds in the KeyBank account to pay for her personal legal bills, the court found that "no evidence was introduced to support that speculation." *Id*. at 13. Accordingly, the probate court denied Scott's claims arising from Stacey's payments to her attorneys.

[15] The court also found for Stacey on Scott's claim that she had failed to provide an accounting of the Trust. Specifically, the probate court found that Stacey was not derelict in her responsibility to provide Scott with periodic accountings of the Trust because Scott had received monthly and yearly statements from

Siberell and annual tax returns from Crowe. In addition, the probate court also found that "Scott knew for a long time that he was not being provided other reports or accounting from Stacey." *Id*. at 12. Because "Scott failed to take any action within two years after becoming aware that Stacey was not providing the information he desired," his "claims arising from a lack of providing accountings [are] barred by the applicable two-year statute of limitations." *Id*. at 13. Accordingly, the court only awarded Scott $416.67.

[16] In regard to Stacey's counterclaim, the probate court found that Scott had received $10,000 "from timber taken from Stacey's property." *Id*. at 16. However, the court found that it was an "honest error" on Scott's part and not conversion, so the court declined to award treble damages to Stacey. *Id*. Accordingly, the court awarded Stacey $10,000. The court then offset the two awards and ordered Scott to pay Stacey $9,583.33. The court declined to award either party attorneys' fees. This appeal ensued.

## Discussion and Decision

[17] The parties appeal the probate court's findings of fact and conclusions thereon following an evidentiary hearing. Where, as here, the court *sua sponte* issues findings and conclusions, "the specific findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies, and we may affirm on any legal theory supported by the evidence adduced at trial." *Trust No. 6011,*

*Lake Cty Trust Co. v. Heil's Haven Condos. Homeowners Ass'n,* 967 N.E.2d 6, 14 (Ind. Ct. App. 2012). Further,

> [w]e apply the following two-tier standard of review to *sua sponte* findings and conclusions: whether the evidence supports the findings, and whether the findings support the judgment. Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility.

*Id*.

### Issue One: Stacey's Legal Fees

Scott first contends that the trial court erred when it concluded that Stacey's legal fees were a legitimate Trust expense based on its finding that Scott's claims were mere speculation and that he did not present any evidence to support his claims. In essence, Scott contends that the probate court wrongly placed the burden on him to prove that the legal fees were not a valid Trust expense. We must agree.

It is well settled that "a trustee bears the burden of justifying the propriety of items in a trust account." *Goins v. Riddle (In re Trust of Riddle)*, 946 N.E.2d 61, 68 (Ind. Ct. App. 2011). Then, if the trustee makes a *prima facie* showing that the accounts are proper, the burden shifts to the beneficiaries to show specific

instances of impropriety. *See id*. Accordingly, the burden was first on Stacey to demonstrate that the legal fees were a legitimate Trust expense.

[20] Here, there is no dispute that Stacey used the KeyBank account, which was funded in part by the Trust, to pay more than $107,000 in attorneys' fees. But the only evidence Stacey presented in relation to those legal fees were invoices in which the description of the work performed is completely redacted. And Stacey did not provide any testimony to indicate that those legal bills pertained to services performed only in relation to the Trust. In other words, the invoices show only who did the legal work, not the work that was done, and there is no dispute that Stacey had hired the same lawyers to work on prior, unrelated lawsuits with which she had been involved in capacities other than her capacity as Trustee of Scott's Trust. Indeed, the evidence demonstrates that, while Scott did not file his lawsuit against Stacey until 2014, the legal bills covered a period of time between 2011 and 2013 and all of the invoices listed Jeff's name, not Scott's name, in reference to the services rendered. *See, e.g.*, Ex. at 266. Accordingly, we agree with Scott that Stacey did not meet her burden to show that the legal fees at issue were related to the Trust or were otherwise a legitimate Trust expense.

[21] We agree with Scott that the trial court improperly placed the burden on him to prove that the legal fees were improper Trust expenses. There is no evidence to support the court's determination that the fees related to the Trust. Thus, we hold that the probate court erred when it found that the legal fees were a legitimate Trust expense. Accordingly, we reverse the probate court's finding in

favor of Stacey on this issue, and we remand with instructions for the probate court to order Stacey to reimburse Scott for his share, or one-third of the legal fees paid from the KeyBank account.

### Issue Two:  Accounting

[22] Scott next asserts that the probate court erred when it found that Stacey had substantially complied with the statutory requirement to deliver a written statement of accounts to Scott because Scott received monthly and yearly statements from Siberell and annual tax returns from Crowe.  Specifically, Scott contends that Stacey never provided an accounting of the Trust to Scott.  He further contends that the statements from Siberell and Crowe did not offer any "insight into Stacey's use of funds in the Key Bank account" and, as such, did not satisfy her reporting requirement.  Appellant's Br. at 13.

[23] Scott is correct that Stacey had an obligation to deliver an accounting to him while she was Trustee of the Trust.  *See* Ind. Code § 30-4-5-12(a) (2018).  And there is no dispute that Stacey never delivered an accounting to Scott. However, the probate court did not only find in favor of Stacey on Scott's claim regarding Stacey's duty to account based on its conclusion that the statements from Siberell and Crowe fulfilled her reporting obligation.  Rather, the probate court also found that "Scott knew for a long time that he was not being provided other reports or accounting from Stacey" and that "Scott was placed on notice several years before 2012 that Stacey understood her responsibility" to provide statements to Scott.  *Id*.  Accordingly, in addition to finding that the Siberell and Crowe statements met Stacey's statutory obligation, the probate

court alternatively found that, "[b]ecause Scott failed to take any action within two years after becoming aware that Stacey was not providing the information he desired, Scott's claims arising from a lack of providing accountings [are] barred by the applicable two-year statute of limitations." *Id.* at 13.

[24] Scott makes no argument on appeal to explain why his claims regarding Stacey's failure to provide Trust accountings are not barred by a statute of limitations. Indeed, Scott does not even acknowledge the probate court's alternate rationale for finding in favor of Stacey on his claim. As such, Scott has not met his burden on appeal to demonstrate that the probate court erred when it denied Scott's claim that Stacey had failed to provide Trust accountings to him. We therefore affirm the probate court's judgment in favor of Stacey on this claim.

### Issue Three: Scott's Attorneys' Fees

[25] Scott also asserts that the probate court erred when it denied his request for attorneys' fees. Specifically, Scott contends that, because "Stacey misspent trust funds, the probate court "should have awarded Scott his legal fees[.]" Appellant's Br. at 10. We agree.

[26] Indiana Code Section 30-4-3-11(b)(4) provides that, "[i]f the trustee commits a breach of trust, the trustee is liable to the beneficiary for . . . reasonable attorney's fees incurred by the beneficiary in bringing an action on the breach." Additionally, Indiana Code Section 30-4-3-22(e) provides that, "[i]f a beneficiary successfully maintains an action" to compel the trustee to redress a

breach of trust, "he is entitled to a judgment for reasonable attorney's fees." Further, our Supreme Court has stated that a trial court is required to award attorneys' fees under those statutes. *See Malachowski v. Bank One, Indianapolis, N.A.*, 682 N.E.2d 530, 532 (Ind. 1997) (holding that the beneficiaries were entitled to reasonable attorney's fees after they successfully maintained an action for breach of trust against the trustee).

[27] Here, the probate court found, and Stacey does not dispute, that she had wrongfully used the KeyBank account, which was funded in part by the Trust, to pay $750 of her husband's real estate taxes and $500 for hay for her horses.[2] Because Scott successfully maintained an action for breach of Trust against Stacey, Scott is entitled to a judgment for reasonable attorneys' fees. We therefore reverse the probate court's judgment denying Scott's request for attorneys' fees, and we remand to the probate court for a determination of reasonable attorneys' fees to award to Scott.

### Issue Four: Stacey's Counterclaim

[28] Scott next asserts that the probate court erred when it ordered him to pay Stacey $10,000 based on the court's conclusion that Scott had been paid that money for timber taken from Stacey's property. We note that the probate court explained its reasoning but did not issue specific findings of fact on this issue.

---

[2] And now, on appeal, Scott prevails on his claim that Stacey wrongfully spent over $107,000 from the KeyBank account on legal expenses unrelated to the Trust. Accordingly, Scott is entitled to an award of attorneys' fees on that ground as well.

Accordingly, the general judgment standard applies, and we may affirm on any legal theory supported by the evidence. *See Trust No. 6011, Lake Cty Trust Co.,* 967 N.E.2d at 14.

[29] Scott contends that "[t]here was no . . . evidence regarding who cut Stacey's trees or when they were cut." Appellant's Br. at 15. We cannot agree. While the probate court did not expressly find that U.S. Timber had removed trees from Stacey's property, that finding is implicit in the court's judgment on Stacey's counterclaim, and there is sufficient evidence in the record to support that inference. Terry testified that he had received a call on April 7, 2015, alerting him that someone was cutting trees on Stacey's property. Terry further testified that, on the same day, he visited Stacey's property and discovered that trees had been "freshly cut." Tr. Vol. II at 123. And Terry testified that U.S. Timber had removed the trees and had provided him with copies of its contracts with Scott, to which the parties stipulated. Thus, contrary to Scott's assertion, there is evidence in the record that U.S. Timber removed trees from Stacey's property on or about April 7, 2015.

[30] Scott next contends that the probate court erred when it ordered Scott to pay Stacey for the timber because "Scott did not direct anyone to go on Stacey's land." Appellant's Br. at 16. He further asserts that, "[i]f U.S. Timber . . . went outside the scope of Scott's authority and harvested trees from neighboring lands, it was outside its agency, and Scott is not liable for its actions." *Id.* In essence, Scott contends that U.S. Timber was an agent but that he is not responsible for the actions of an agent that exceeded the scope of its authority.

[31] While Scott describes U.S. Timber as an "agent," and Stacey does not dispute that characterization, the record indicates that U.S. Timber was an independent contractor. An independent contractor is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right of control with respect to his physical conduct in the performance of the undertaking." *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 148 (Ind. 1999). Here, U.S. Timber contracted with Scott to remove timber from two properties owned by Scott. And there is no evidence in the record to indicate that Scott exerted any control over U.S. Timber when it removed the timber. Indeed, Scott testified that he was out of the state at the time U.S. Timber harvested Stacey's trees. All of the evidence shows that U.S. Timber was an independent contractor.

[32] It is well settled that, generally, a person who hires an independent contractor is not liable for the acts of the independent contractor. *See Barnard v. Menard, Inc.*, 25 N.E.3d 750, 755 (Ind. Ct. App. 2015). This is because the person who hires the contractor typically exercises little, if any, control over the means or manner of the works of its contractors and requires only that the completed work meet the specifications of the contract. *See id.* Because U.S. Timber was an independent contractor, and because Scott did not exert any control over U.S. Timber, Scott is not liable at law for U.S. Timber's act of removing timber from Stacey's property.

[33] The probate court explained its judgment on Stacey's counterclaim as follows:

> The final issue is the claim asserted by Stacey against Scott for timber removed from Stacey's separate property for which Scott received compensation in the amount of $10,000.00. *The Court finds that Scott received $10,000.00 from timber taken from Stacey's property, and Scott must pay that amount to Stacey.* However, there was absolutely no evidence whatsoever that would allow the Court to find that Scott's actions in receiving $10,000.00 from the sale of timber from Stacey's land was done intentionally, recklessly, or willfully. It was not a conversion. It was an honest error on Scott's part. Scott's actions are not criminal in nature and do not justify the trebling of damages or an award of attorney fees pursuant to I.C. § 34-24-3-1. However, the timber proceeds belong to Stacey and judgment on Stacey's counterclaim is therefore entered in favor of Stacey and against Scott in the amount of $10,000.00.

Appellant's App. Vol. II at 15-16 (emphasis added).

[34] While the probate court did not mention unjust enrichment, the court found, in effect, that Scott had been unjustly enriched. The parties did not address unjust enrichment in their briefs. Because we may affirm on any theory supported by the record, *see Trust No. 6011, Lake Cty Trust Co.*, 967 N.E.2d at 14, we will consider whether Scott was unjustly enriched. This court has recently stated that, to show unjust enrichment, "'a plaintiff must establish that a *measurable benefit* has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.'" *Estate of Henry v. Woods*, 77 N.E.3d 1200, 1207 (Ind. Ct. App. 2017) (quoting *Bright v. Kuehl*, 650 N.E.2d 311, 316 (Ind. Ct. App. 1995) (emphasis added).

[35] The evidence shows that Scott contracted with U.S. Timber to remove timber from two of his properties; the contract price was a total of $10,000; U.S. Timber removed timber from Stacey's property; and U.S. Timber paid Scott $10,000. From this evidence, the trial court inferred "that Scott received $10,000 from timber taken from Stacey's property," Appellant's App. Vol. II at 15-16, and, hence, that Scott received a measurable benefit to which he was not entitled. There is no direct evidence that either all or any part of U.S. Timber's $10,000 payment to Scott was attributable to timber cut from Stacey's property. For that matter, there is no evidence that any such payment was not for timber removed from Scott's properties. The contract price was not based on whether more or less timber was cut, and there is no evidence that Scott received any additional consideration or benefit from U.S. Timber's removal of Stacey's timber beyond the contract price. There are gaps in the evidence, including questions that could have and should have been asked on the direct or cross-examination of Scott, or evidence that might have been provided by third-party witnesses who were not called to testify.

[36] Nevertheless, we need not decide whether the evidence supports the trial court's conclusion that Scott received a benefit for which he was not entitled because there is an adequate and independent reason why Stacey is not entitled to recover from Scott. Unjust enrichment is an equitable remedy, which is usually unavailable where there is an adequate remedy at law. *Swami, Inc. v. Lee*, 841 N.E.2d 1173, 1178 (Ind. Ct. App. 2006). Here, again, shortly after Terry received a phone call in April 2015 alerting him that timber was being removed

from Stacey's property, he learned that U.S. Timber had harvested the trees. That same day, Terry filed a police report in which he asserted that timber had been stolen from Stacey's property. There is no discovery issue here. Stacey was on inquiry notice that her timber had been cut and had good reason to believe that U.S. Timber was liable for it. Stacey could have pursued a claim against U.S. Timber but did not. Because Stacey had an adequate remedy at law in 2015, she is not entitled to an equitable remedy from Scott years later.[3]

[37] In sum, the evidence shows that Stacey had been damaged by the unauthorized removal of timber from her property. The evidence also shows that U.S. Timber was acting as an independent contractor when it removed the timber and that Scott is not liable as a matter of law for U.S. Timber's conduct. Further, because Stacey had an adequate remedy at law against U.S. Timber but failed to pursue it, she is not entitled to an equitable remedy against Scott, and the trial court erred when it ordered Scott to pay Stacey $10,000. We therefore reverse the trial court's judgment on this issue.

### Issue Five: Stacey's Attorneys' Fees

[38] Finally, Stacey contends that the probate court erred when it found that she is not entitled to recover attorneys' fees from Scott. Specifically, Stacey contends

---

[3] Moreover, we observe that Stacey's action against U.S. Timber would be for the wrongful removal of her timber, and damages would be measured by stumpage not the contract price agreed to by Scott and the timber company. And Stacey would be entitled to seek an amount not to exceed three times her actual damages, costs of the action, a reasonable attorney's fee, travel expenses, and other reasonable costs of collection. *See* Ind. Code § 34-24-3-1.

that the probate court "prematurely" ruled on the issue of attorneys' fees because the parties had agreed in the final pretrial order "that neither party would submit a fee claim until such time as the underlying matters had been determined." Appellee's Br. at 17, 19. In essence, Stacey contends that the probate court wrongly denied her the opportunity to file a motion for attorneys' fees. We cannot agree.

[39] In the final pre-trial order, the parties agreed that "any claim for legal fees will be presented through a post-trial motion[.]" Appellant's App. Vol. II at 34, n.1. Following the hearing, Stacey submitted a post-trial brief in which she extensively argued that Scott's claims were baseless and not supported by the evidence. She further asserted that she had not breached her duties as Trustee. Accordingly, Stacey asserted in her post-trial brief that she is "entitled" to recover "the money she has spent defending the claims in this matter[.]" *Id.* at 58.

[40] Because the parties agreed to present any claim for attorneys' fees in post-trial motions, and because Stacey filed a post-trial brief in which she requested attorneys' fees for defending against Scott's action, the probate court did not deny Stacey the opportunity to make her claim that she is entitled to an award

of attorneys' fees.[4]  We affirm the probate court's denial of an award of attorneys' fees for Stacey.

### Conclusion

In sum, we hold that the probate court erred when it found that Stacey's legal fees were reasonable Trust expenses.  We further hold that Scott did not meet his burden on appeal to demonstrate that the probate court erred when it concluded that his claims against Stacey regarding her duty to account were precluded by the applicable statute of limitations.  Additionally, we hold that the probate court erred when it declined to award Scott attorneys' fees.  As to Stacey's counterclaim, the probate court erred when it ordered Scott to pay Stacey $10,000 for timber that U.S. Timber had harvested from her property.  Finally, we hold that the probate court did not deny Stacey the opportunity to file a motion for attorneys' fees.  We therefore affirm the probate court in part, reverse in part, and remand with instructions.

Affirmed in part, reversed in part, and remanded for further proceedings.

Baker, J., and Robb, J., concur.

---

[4]  Stacey also asserts that a "consideration of Stacey's fees is warranted" because she "was found not to have violated any of her obligations as Trustee.  Appellee's Reply Br. at 7.  To the extent Stacey asserts that she is entitled to an award of attorneys' fees because she successfully defended against Scott's claims, we cannot agree.  As discussed above, Stacey wrongfully used a bank account partially funded by Trust funds to pay for over $107,000 in legal fees not related to the Trust, her husband's real estate taxes, and hay for her horses.