ATTORNEYS FOR APPELLANT
Robert D. King, Jr.
David R. Thompson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Danny E. Glass
Adam S. Glass
Evansville, Indiana

# In the
# Indiana Supreme Court



FILED
Jun 03 2014, 8:59 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 82S01-1305-CT-363

VIRGINIA E. ALLDREDGE AND JULIA A.
LUKER, AS CO-PERSONAL REPRESENTATIVES
OF THE ESTATE OF VENITA HARGIS,

*Appellants (Plaintiffs below),*

v.

THE GOOD SAMARITAN HOME, INC.,

*Appellee (Defendant below).*

Appeal from the Vanderburgh Superior Court, No. 82D03-1110-CT-5314
The Honorable Robert J. Tornatta, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A01-1206-CT-249

**June 3, 2014**

**Massa, Justice.**

Nearly two centuries ago, Justice Stephen C. Stevens observed: "the wisest of judges have had much trouble in wading through the labyrinth of difficulties, discriminations, technicalities and shades that have gathered around the statute of limitations." Raymond v.

Simonson, 4 Blackf. 77, 84 (Ind. 1835).[1]  Although the case before us concerns the statutory filing period of a non-claim statute rather than a statute of limitation, we find Justice Stevens's metaphor equally applicable here, where plaintiffs appeal the trial court's determination that their wrongful death claim was untimely filed.  Ultimately, we navigate this labyrinth and conclude we must reverse the trial court.

## Facts and Procedural History

In November 2006, Venita Hargis lived at The Good Samaritan Home, a nursing home in Evansville.  Due to her medical condition, she was prone to falling.  On November 17, a nurse called one of Hargis's daughters, Julia Luker, and told her Hargis had suffered a fall, started vomiting a few hours later, and was being transported to the hospital.  On November 26, Hargis died as a result of the head injury she sustained in this alleged fall.

Nearly three years later, on November 24, 2009, a former employee of Good Samaritan visited another of Hargis's daughters and told her Hargis's head injury had not been caused by a fall.  Rather, another resident had attacked Hargis and pushed her to the floor.

In December 2010, Luker and Virginia Alldredge, as co-personal representatives, opened an estate for Hargis in order to pursue a wrongful death action.  They filed their complaint on October 27, 2011, alleging Good Samaritan negligently caused Hargis's death and then fraudulently concealed its negligence.  Good Samaritan moved to dismiss the complaint pursuant

---

[1] Justice Stevens, the fifth Justice to serve on our Court, "was known for his industry and his verbosity." Douglas K. Fivecoat, "Stephen C. Stevens," in Justices of the Indiana Supreme Court 17–18 (Linda C. Gugin & James E. St. Clair eds., 2010).  Raymond was the last opinion he wrote before he resigned from the bench to return to private practice; thirty-three years later, after losing his fortune in a bad railroad investment, he died destitute in the Indiana Hospital for the Insane. Id. at 19.

to Trial Rule 12(B)(6), arguing plaintiffs were not entitled to relief because they failed to file the action within two years of Hargis's death as required by the Indiana Wrongful Death Act. Ind. Code § 34-23-1-1 (2012 & Supp. 2013). Good Samaritan also argued that fraudulent concealment, even if it had occurred, could neither extend nor toll that statutory time period.

Plaintiffs successfully moved to treat Good Samaritan's motion as a motion for summary judgment pursuant to Trial Rule 56, noting Good Samaritan had attached an exhibit to its motion and thus it relied upon evidence outside the pleadings. After both parties briefed the issue and designated evidence, the trial court granted Good Samaritan's motion. Citing Southerland v. Hammond, 693 N.E.2d 74, 78 (Ind. Ct. App. 1998), in which a panel of our Court of Appeals stated that as to a wrongful death claim, "the fraudulent concealment exception does not establish a new date for the commencement of the statute of limitations, but rather creates an equitable exception" under which a "plaintiff must institute an action within a reasonable time after he discovers information which would lead to discovery of the cause of action," the trial court concluded the plaintiffs had waited too long after learning the true cause of death: a year to open the estate and nearly two years to file their complaint.

Plaintiffs moved to correct error, stating several reasons they should have had two years from November 24, 2009—the discovery date—to file their complaint. First, they cited the Fraudulent Concealment Statute, which provides: "If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action." Ind. Code § 34-11-5-1 (2012). Second, they argued the two-year statutory period offended Article 1, § 12 of our Indiana Constitution. Third, they claimed that pursuant to the "discovery rule" we established in Van Dusen v. Stotts, 712 N.E.2d 491, 497 (Ind. 1999), the two-year statutory period did not begin to run until the discovery date. Fourth, they asserted Southerland should not apply because the plaintiff in that case discovered the claim *within* the two-year statutory period, while they didn't discover their claim until *after* the two-year statutory period ended. Finally, they maintained that even if the Southerland "reasonable time" standard did apply, Good

3

Samaritan failed to show there was no genuine issue of fact as to whether their complaint was filed within a reasonable time.

The trial court denied plaintiffs' motion, reiterating its prior reasoning that fraudulent concealment does not extend or delay the two-year statutory period to file a wrongful death action. It did, however, state it "agree[d] with the [plaintiffs] that this is an arguably arbitrary and capricious standard i.e. what is a reasonable time?" App. at 84. But based on its reading of precedent cases, it ultimately concluded plaintiffs' action was untimely, noting "this court is obligated to follow the law as it understands it." App. at 85.

The plaintiffs appealed, and the Court of Appeals reversed in part, holding the plaintiffs had two years from the discovery date to file their complaint. Alldredge v. Good Samaritan Home, Inc., 982 N.E.2d 378, 384 (Ind. Ct. App. 2013). The panel concluded the Fraudulent Concealment Statute could not apply to toll the two-year filing period because it was enacted before the Wrongful Death Act, but that common-law fraud could apply. Id. at 382–83 (citing Guy v. Schuldt, 236 Ind. 101, 105, 138 N.E.2d 891, 893 (1956) (declining to apply the Fraudulent Concealment Statute to toll the statute of limitation in the Medical Malpractice Act)). Accordingly, the panel extended our holding in Van Dusen, 712 N.E.2d at 497 (providing a plaintiff who doesn't discover his illness or injury until after the two-year MMA statute of limitation has run has two years from the discovery date to file his claim) to the wrongful death context. Alldredge, 982 N.E.2d at 383. Thus, the panel reversed the trial court's grant of summary judgment to Good Samaritan and remanded the case to give the plaintiffs an opportunity to prove common-law fraud. Id. at 384.

We granted transfer. Alldredge v. Good Samaritan Home, Inc., 987 N.E.2d 522 (Ind. 2013) (table); Ind. Appellate Rule 58(A).

4

**Standard of Review**

We review a trial court's order granting summary judgment de novo.  Atterholt v. Herbst, 902 N.E.2d 220, 222 (Ind. 2009).  And we apply the same standard as the trial court:  summary judgment is appropriate only where the moving party demonstrates there is no genuine issue of material fact and he is entitled to judgment as a matter of law.  Ind. Trial Rule 56(C); Jackson v. Scheible, 902 N.E.2d 807, 809 (Ind. 2009).  If the moving party carries his burden, the non-moving party must then demonstrate the existence of a genuine issue of material fact in order to survive summary judgment.  Eads v. Cmty. Hosp., 932 N.E.2d 1239, 1243 (Ind. 2010).  Just as the trial court does, we resolve all questions and view all evidence in the light most favorable to the non-moving party, Jackson, 902 N.E.2d at 809, so as to not improperly deny him his day in court.  Miller v. Dobbs, 991 N.E.2d 562, 564 (Ind. 2013).


**The Fraudulent Concealment Statute Applies to Toll the Two-Year Statutory Period to File a Wrongful Death Claim.**

Plaintiffs argue the Fraudulent Concealment Statute requires they be given two years after the discovery date to file their wrongful death claim.  Defendant contends the Wrongful Death Act's two-year filing period is a condition precedent to the existence of the claim and thus not susceptible to tolling under any circumstance whatever.  The interaction of these two statutes presents us with an issue of first impression.

   **A.  Indiana's Wrongful Death Act**

The common law traditionally rejected any right of recovery for wrongful death.[2]  See, e.g., Baker v. Bolton, 1 Camp. 493, 170 Eng. Rep. 1033 (Nisi Prius 1808) ("In a civil court, the death of a human being could not be complained of as an injury; and in this case the damages as to the plaintiff's wife must stop with the period of her existence."); Carey v. Berkshire R.R. Co., 55 Mass. 475, 475 (1848) ("An action on the case cannot be maintained by a widow, to recover damages for the loss of her husband, or by a father for the loss of service of his child, in consequence of the death of the husband or child, occasioned by the carelessness or fault of the agents or servants of a railroad corporation.").  That rejection was based on two legal principles: first, that a personal tort right of recovery lives and dies with the injured party (*actio personalis moritur cum persona*), and second, that a living person injured as a result of another's death has no right of recovery.  Wex S. Malone, The Genesis of Wrongful Death, 17 Stan. L. Rev. 1043, 1044 (1965).

Scholars have described the origins of the statutory wrongful death action in colorful terms:

> In a sense it is a novel of the nineteenth century, a story of the new swarming into crowded cities, the travail of the factory and, above all, of the first hurtling of men and goods across the continent on steel rails.  Up until this time unnatural death meant largely death by violence in the popular sense of the word.  It was the work of the robber, the burglar, or the hot-blooded man.  Usually the culprit was executed or confined behind bars.  Even if he were left free in society he was usually without any means to compensate the bereaved family of the victim.  In this setting, wrongful death was a matter of little concern to the civil law, and lawmen developed no tools for the handling of it.  Then, suddenly at mid-century society faced up in panic to a virtually new phenomenon—

---

[2] Although somewhat beyond the scope of this opinion, it is worth noting there is some precedent for a common-law wrongful death recovery right—at least in the maritime context.  See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 409 (1970) (holding "that an action does lie under general maritime law for death caused by violation of maritime duties").

accidental death through corporate enterprise. Tragedy as a result of indifference and neglect was suddenly upon us in the factory, on the city streets, and on the rails. Nor was the principal villain of the piece any longer the impecunious felon. In his place stood the prospering corporation with abundant assets to meet the needs of widows and orphans.

Malone, supra, at 1043.

Our General Assembly first enacted a wrongful death statute in 1852. 1852 Rev. Stat. vol 2, ch. 1 § 784. It has since been amended on numerous occasions, most recently in 1998. Durham ex rel. Estate of Wade v. U-Haul Int'l, 745 N.E.2d 755, 758 (Ind. 2001) (citing 2 G. & H. 330, §§ 782–84 (1870); 1881 Ind. Acts (Spec. Sess.) ch. 38, § 8); 1899 Ind. Acts ch. 177, § 1; 1933 Ind. Acts ch. 112, § 1; 1937 Ind. Acts ch. 292, § 3; 1949 Ind. Acts ch. 42, § 1; 1951 Ind. Acts ch. 140, § 1; 1957 Ind. Acts ch. 25, § 1; 1965 Ind. Acts ch. 174, § 1; P.L. 198-1982, § 2, 1982 Ind. Acts 1465; P.L. 246-1985, § 27, 1985 Ind. Acts 1751; P.L. 1-1998, § 18, 1998 Ind. Acts 141. In its current form, it provides, in pertinent part: "When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years." Ind. Code § 34-23-1-1.

Our Court of Appeals has said before that the two-year period in the Wrongful Death Act "is not a statute of limitation but a condition precedent to the existence of the claim," Gen. Motors Corp. v. Arnett, 418 N.E.2d 546, 548 (Ind. Ct. App. 1981), and that the Act is therefore "a non-claim statute, not subject to tolling." Southerland v. Hammond, 693 N.E.2d 74, 77 (Ind. Ct. App. 1998).

**B. Fraudulent Concealment in Common Law and Statute**

For centuries, our justice system has operated under the principle that a person who commits fraud should not be permitted to gain thereby. See, e.g., Talbot v. Jansen, 3 U.S. 133, 158 (1795) (Paterson, J.) ("Hence the efficacy of the legal principle, that no man shall set up his own fraud or iniquity, as a ground of action or defence."); Bd. of Comm'rs of Clinton Cnty. v.

7

Davis, 162 Ind. 60, 69 N.E. 680, 683 (1904) ("It is a maxim of the law that no man shall be permitted to profit by, or take advantage of, his own wrong, or to found any claim upon his own iniquity."). As applied to statutes of limitation, this principle means "the statute in good conscience can not run until the party has a right to commence his suit, and that right can not accrue in the case of fraud, until the injured party is informed of the injury done or fraud committed." Raymond, 4 Blackf. at 84–85. Thus, a tortfeasor's fraudulent concealment of his wrong ordinarily will operate to toll the statute of limitation until the plaintiff discovers the wrong. Doe v. Shults-Lewis Child & Family Servs., Inc., 718 N.E.2d 738, 744–45 (Ind. 1999) (citing Fager v. Hundt, 610 N.E.2d 246, 251 (Ind. 1993)). At that point, the plaintiff has "a reasonable amount of time" to bring his claim. Id. at 745.

Just as time captures insects in amber, the General Assembly captured the common-law fraudulent concealment doctrine in statute: "If any person liable to *any of the actions mentioned in this article*, shall conceal the cause of such action against him from the knowledge of the person entitled thereto, the action may be commenced at any time within the period limited therefor, commencing from the time the person entitled to bring the same shall discover that he has such cause of action against the person so liable and concealing the same, and not afterwards." Ind. Rev. Stat. ch. 40 § 113 (1843) (emphasis added). The "article" referred to in the statute, entitled "of the limitation of personal actions," comprised sections 101 through 122 and established various statutes of limitation for common-law torts such as trespass to land, Ind. Rev. Stat. ch. 40 § 101 (1843) (six years), assault, Ind. Rev. Stat. ch. 40 § 103 (1843) (three years), and libel, Ind. Rev. Stat. ch. 40 § 104 (1843) (one year).

In 1852—the same year the Wrongful Death Act was enacted—the General Assembly revised the limitation article. 1852 Rev. Stat. vol. 2, ch. 1, §§ 210–28. The article's general purpose—to establish statutes of limitation for common-law torts—remained the same. 1852 Rev. Stat. vol. 2, ch. 1, §§ 210–28. The revisions, however, included a new and broader title: "Limitation of Civil Actions." 1852 Rev. Stat. vol. 2, ch. 1, §§ 210–28. And, critically, the Fraudulent Concealment Statute was amended to provide: "If any person liable to *an action* shall conceal the fact from the knowledge of the person entitled thereto, the action may be

8

commenced at any time within the period of limitation, after the discovery of the cause of action." Ind. Rev. Stat. ch. 1, § 219 (1852) (emphasis added). Thus, the statute's application was no longer limited to the causes of action listed in the "limitation of personal actions" article; now it applied broadly to all "Civil Actions."

And that language has survived to the present day without substantive amendment; the Fraudulent Concealment Act now provides: "If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action." Ind. Code § 34-11-5-1. We have said before that when a plaintiff can prove this statute applies, it effectively moves the date on which the statute of limitation begins to run forward from the date of the alleged tort to the discovery date. Malachowski v. Bank One, Indianapolis, 590 N.E.2d 559, 563 (Ind. 1992). "Usually, to invoke the protection provided by this statute, the wrongdoer must have actively concealed the cause of action and the plaintiff is charged with the responsibility of exercising due diligence to discover the claims." Id. (citing Hinds v. McNair, 235 Ind. 34, 45, 129 N.E.2d 553, 560 (1955)). "The affirmative acts of concealment must be calculated to mislead and hinder a plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation. There must be some trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry." Johnson v. Blackwell, 885 N.E.2d 25, 32 (Ind. Ct. App. 2008) (quoting Olcott Int'l & Co. v. Micro Data Base Sys., Inc., 793 N.E.2d 1063, 1072 (Ind. Ct. App. 2003)). But if the parties are in a fiduciary relationship such that the defendant had a duty to disclose the existence of the claim to the plaintiff, the concealment need not be active; the defendant's failure to fulfil that duty may be sufficient to invoke the protection of the statute. Malachowski, 590 N.E.2d at 563.

### C. Guy and Glus: "Fraud Vitiates Anything."

In addition to the statutory history above, we find two precedent cases, one from our Court and one from the federal Supreme Court, useful guideposts. We begin nearly sixty years ago, with Guy v. Schuldt, 236 Ind. 101, 138 N.E.2d 891 (1956), in which we considered whether

9

the Fraudulent Concealment Statute applied to toll the two-year statute of limitations in the Medical Malpractice Act. In Guy, the plaintiff underwent an operation on his leg in March 1937 and proceeded to suffer pain for the next fifteen years until November 1952, when another physician discovered a piece of a metal drill bit in the leg and removed it. Id. at 103–04; 138 N.E.2d at 892. In August 1954, the plaintiff sued his original surgeon, who promptly—and successfully—argued the claim was time-barred. Id. at 104; 138 N.E.2d at 892–93. On appeal, we rejected the plaintiff's argument that the Fraudulent Concealment Statute applied to save his claim, noting that statute predated the MMA by nearly fifty years[3] and the MMA was "a special act, and . . . absolute in its language." Id. We concluded "the Legislature would have stated [the MMA] was subject to the exceptions listed in the Acts of 1881 if it had so intended." Id. Nevertheless, we reversed the trial court, finding the plaintiff's cause of action could survive under the common-law fraudulent concealment doctrine:

> The question here is not, are there allegations of fraudulent concealment in the complaint, but rather, is a party entitled to plead and prove such a defense (if the facts exist) against the statute of limitations? *Fraud vitiates anything.* Courts will not uphold fraud, or presume the Legislature intended to do so by allowing one in a confidential relationship to conceal an injury done another until the statute of limitations has run. The language of the statute should be so plain that there is no question as to its meaning if the Legislature intends to give a wrongdoer the advantage and benefit of his fraudulent concealment of an injury done another.

Id. at 111, 138 N.E.2d at 896–97 (emphasis added).

Three years later, our federal colleagues considered whether a defendant's own fraud could equitably estop it from claiming plaintiff's complaint, brought under a non-claim statute,

---

[3] Of course, the Fraudulent Concealment Act, passed in 1843, actually predates the MMA by nearly a century. Compare 1843 Ind. Rev. Stat. ch. 40, § 113 (codifying the Fraudulent Concealment Act) with 1941 Ind. Acts ch. 116, § 1 (codifying the MMA).

was time-barred. In Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231 (1959), the plaintiff sued under the Federal Employers' Liability Act to recover damages for a disease he allegedly contracted at work. Id. at 231. At the time, FELA required, as a condition precedent to the maintenance of a suit, that the plaintiff file his complaint within three years of his injury. Id. Although the plaintiff hadn't fulfilled that condition, he argued the defendant was nonetheless estopped from raising the issue because it incorrectly had told him he had seven years to sue. Id. at 231–32. The defendant countered that estoppel might apply if FELA had a statute of limitation, but as FELA was a non-claim statute, nothing—not even fraud—could resurrect the plaintiff's untimely claim. Id. at 232. Both the district court and the Second Circuit ultimately agreed with the defendant, but the Supreme Court granted certiorari and reversed. Id. at 232, 235. Justice Black, writing for the Court, said: "To decide the case we need look no further than the maxim that no man may take advantage of his own wrong." Id. at 232. Significantly, the Court applied a *presumption in favor* of estoppel and found it unrebutted:

> We have been shown nothing in the language or history of the Federal Employers' Liability Act to indicate that this principle of law, older than the country itself, was not to apply in suits arising under that statute. Nor has counsel made any convincing arguments which might lead us to make an exception to the doctrine of estoppel in this case. To be sure language in some decisions of this Court can be taken as supporting such an exception. But that language is in dicta and is neither binding nor persuasive. Accordingly, we hold that it was error to dismiss this case.

Id. at 234–35. The Court remanded the case to the trial court to give the plaintiff an opportunity to "make out a case calling for application of the doctrine of estoppel" by proving he "was justifiably misled into a good-faith belief that he could begin his action at any time within seven years after it had accrued." Id. at 235.

Taken together, Guy and Glus make clear that neither an ordinary statute of limitation nor a temporal condition precedent will bar a plaintiff's claim when the delay in filing was due to the tortfeasor's fraud. Guy tells us that if the legislature intends to create a time limitation that will not be tolled by fraud, it must do so expressly. Glus adds that courts should presume fraud will

11

toll any time period, be it statute of limitation or condition precedent, and the burden is on the tortfeasor to demonstrate contrary legislative intent.

### D. The Way Out of the Labyrinth

Based upon our review of the historical and precedential records, we conclude that if a plaintiff makes the necessary factual showing, the Fraudulent Concealment Statute may apply to toll the Wrongful Death Act's two-year filing period. In so holding, we break very little new ground. We have said before that fraud may toll the filing period of a non-claim statute. Gayheart v. Newnam Foundry Co., Inc., 271 Ind. 422, 425, 393 N.E.2d 163, 166 (1979) (holding that if a party "has been fraudulently induced into foregoing the filing of an application for modification" of a workers' compensation award, the statutory filing period "shall be deemed tolled at the moment the fraud was perpetrated" even though the Workers' Compensation Act is a non-claim statute).

And our Court of Appeals has implicitly accepted the application of that principle in the wrongful death context. In Johnson v. Hoosier Enterprises III, Inc., 815 N.E.2d 542 (Ind. Ct. App. 2004), trans. denied, an elderly resident of a health care facility died after choking on a piece of food during a meal. Id. at 543. Her personal representative sued the facility, but during discovery—and more than two years after the decedent passed away—he learned another entity operated the facility pursuant to a management agreement. Id. He amended the complaint to name the operator, alleging the operator fraudulently concealed its identity and thus the Fraudulent Concealment Statute should apply to permit the amendment. Id. at 545, 548. The trial court entered summary judgment for the operator, but a unanimous panel of our Court of Appeals reversed. Id. at 551. The panel, assuming without deciding that the Fraudulent Concealment Statute *could* toll the statutory period to file a wrongful death claim, reasoned there were genuine issues of fact as to whether the operator had fraudulently concealed its identity and remanded the case to the trial court. Id. at 550–51. Indeed, commentators and courts alike read Johnson to mean that fraudulent concealment could extend the statutory period for a wrongful death action regardless of whether the concealment involved the identity of the tortfeasor or the

existence of the cause of action.  Michael A. Dorelli, Recent Developments in Indiana Civil Procedure, 38 Ind. L. Rev. 919, 944 (2005); Robertson v. Gene B. Glick Co., Inc., 960 N.E.2d 179, 184–85 (Ind. Ct. App. 2011) ("we have previously recognized certain equitable exceptions, such as fraudulent concealment, as valid bases for delay" in filing a wrongful death action).[4]

Public policy considerations further bolster our conclusion.  Were we to hold otherwise, we would be incentivizing fraud and thus thwarting the obvious purpose of the Fraudulent Concealment Statute.  And our decision today is consistent with that of courts in other jurisdictions, which have routinely found fraud may toll a statutory filing period even when it is a condition precedent to the existence of the claim rather than a statute of limitation.  See, e.g., In re Mentor Corp. ObTape Transobturator Sling Products Liab. Litig., MDL No. 2004, Nos. 4:08-MD-2004 (CDL), 4:11-CV-5075, 2013 WL 592409 (M.D. Ga. Feb. 14, 2013) (contract-based breach of warranty claim); Stonemor Operating, LLC v. Bush, No. 1:08-CV-631, 2012 WL 3704952 (W.D. Mich. Aug. 27, 2012) (conversion); White v. Steuben Cnty., Ind., No. 1:11-CV-019, 2011 WL 4496504 (N.D. Ind. Sept. 27, 2011) (fraudulent concealment and intentional infliction of emotional distress under the Indiana Tort Claims Act); see also DeCosse v.

---

[4] Good Samaritan cites Southerland v. Hammond, 693 N.E.2d 74 (Ind. Ct. App. 1998) for the proposition that the Wrongful Death Act, and indeed any non-claim statute, is not subject to tolling under any circumstance whatever.  In Southerland, the plaintiff personal representative filed his wrongful death action more than two years after the decedent's death, but argued the Fraudulent Concealment Statute should apply to save his claim.  Id. at 77.  A panel of our Court of Appeals declined to address that argument, however, reasoning that the plaintiff discovered the fraud "approximately fifty days" before the end of the two-year filing period.  Id. at 78.  Thus, even if the Fraudulent Concealment Statute did apply, the panel concluded, the plaintiff could not claim its benefit, because he already had "a reasonable time" to file his claim.  Id.

But we believe this reasoning misses the mark.  Certainly the panel was correct that under the common-law doctrine of fraudulent concealment, a plaintiff is entitled to a "reasonable time" after discovery to file his claim, and fifty days might well be a "reasonable time," depending upon the facts and circumstances of the case.  But under the Fraudulent Concealment Statute, a plaintiff is entitled to an entire statutory period after discovery to file his claim, which in the wrongful death context means two years. Thus, the common-law analysis should always be separate and distinct from the statutory one, as it was in Guy.

Armstrong Cork Co., 319 N.W.2d 45, 52 (Minn. 1982) (holding the state wrongful death statute was a non-claim statute but nonetheless subject to tolling under the common-law fraudulent concealment doctrine).

Finally, as we have resolved this appeal on other grounds, we need not address plaintiffs' alternative common-law and constitutional arguments. Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP, 976 N.E.2d 699, 704 n.1 (declining to address appellee's remaining arguments after disposing of the case). So concludes our progress through the labyrinth; accordingly, "[w]e will not . . . at this time, pursue this perplexing subject any further." Raymond, 4 Blackf. at 84.

## Conclusion

We therefore reverse the trial court's grant of summary judgment to Good Samaritan and remand this case to the trial court for further proceedings consistent with our opinion today.

Dickson, C.J., and Rucker, David, and Rush, JJ., concur.