FILED

Jun 26 2020, 8:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

John P. Young
Young & Young
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David C. Jensen
James L. Hough
Eichhorn & Eichhorn, LLP
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Teresa Blackford, *Appellant-Plaintiff,* | June 26, 2020 |
| | Court of Appeals Case No. 19A-CT-2054 |
| v. | Appeal from the Vanderburgh Circuit Court |
| Welborn Clinic, *Appellee-Defendant* | The Honorable David D. Kiely, Judge |
| | Trial Court Cause No. 82C01-1804-CT-2434 |

**Baker, Judge.**

[1] Teresa Blackford was tested by Welborn Clinic ("Welborn") in 2003 for hepatitis as a possible cause of her skin condition, Lichens Planus. At that time, Welborn allegedly informed Blackford that the test results were negative for hepatitis. In 2014, Blackford learned that the 2003 test results had actually been positive, and she sued Welborn for medical malpractice. Blackford now appeals the trial court's order granting Welborn's motion for summary judgment and denying Blackford's motion for partial summary judgment, arguing that the five-year nonclaim limitation imposed by the Indiana Business Trust Act (IBTA) should be tolled because Welborn's fraudulent concealment prevented her from discovering she had a cause of action any sooner.

[2] Finding that the nonclaim limitation is tolled due to Welborn's fraudulent concealment, we reverse and remand (1) with instructions to enter partial summary judgment in favor of Blackford on the issue of the timeliness of the complaint under the IBTA; and (2) for further proceedings.

# Facts[1]

[3] In 1963, Welborn was created as a business trust under the IBTA with its principal place of business in Evansville. Blackford first became a patient at Welborn in 1999. Sometime in 2003, Blackford sought treatment from Welborn

---

[1] A virtual remote oral argument was held on May 22, 2020. We thank the parties for their excellent oral and written presentations, especially in light of the new format and unusual circumstances.

for Lichens Planus, an inflammatory skin condition.[2] Because hepatitis can be an underlying cause of Lichens Planus, Welborn tested Blackford for hepatitis on October 1, 2003. Shortly thereafter, Welborn informed Blackford that the test results were negative and that hepatitis was therefore not a cause of her Lichens Planus. For the next several years, Blackford continued to see providers at Welborn to seek treatment for and determine the cause of her Lichens Planus.

[4] In the fall of 2008, Welborn sold its assets to Deaconess Clinic, Inc., and the medical clinic previously owned and operated by Welborn was renamed Deaconess Clinic. Following the sale, on October 1, 2008, Welborn changed its name to WC Liquidating Corp. On June 30, 2009, WC Liquidating Corp. gave notice under the IBTA that it was surrendering its authority to transact business in Indiana.

[5] Sometime in 2014, Blackford's health significantly worsened, and she "became ill with places on her arms and . . . didn't feel very good." Appellant's App. Vol. II p. 28. Blackford's new family physician[3] sent her to another doctor, who ran some tests and determined that Blackford was positive for hepatitis C. To confirm that the original test performed in 2003 showed that Blackford was

---

[2] Blackford was primarily treated by Dr. Naji Tawfik, M.D., a Welborn employee. The original proposed complaint that was filed with the Indiana Department of Insurance (IDOI) named Dr. Tawfik and Deaconess Clinic, Inc., the group that purchased Welborn in 2008, as defendants in addition to Welborn.

[3] The record does not reveal when, precisely, the patient-physician relationship between Blackford and Welborn ended. We will assume that, at the latest, it ended the day Welborn surrendered its authority to transact business on June 30, 2009.

negative for hepatitis, Blackford signed a release for her medical records from Welborn to view the 2003 test results and share them with her new doctor. In November 2014, Blackford received the records from Welborn, which stated that the 2003 test showed she had been "highly reactive" and positive for hepatitis, not negative. *Id.* at 29.

[6] Over the eleven years that had elapsed between the original hepatitis test in 2003 and the one in 2014, Blackford exhibited no symptoms of hepatitis and had received no treatment for hepatitis; in fact, she had been administered steroid treatments that are contraindicated for a patient who has hepatitis. *See* Appellant's App. Vol. II p. 28-29, 34, 37. Once discovered, the hepatitis was successfully treated in 2014, but due to the lack of earlier treatment, Blackford developed cirrhosis of the liver and now must undergo regular testing every two years due to a heightened risk for developing liver cancer. Blackford was also diagnosed with cryoglobulinemia and xanthelasma, two conditions which, like the cirrhosis and Lichens Planus, were likely caused by the hepatitis. Blackford believes that "had [she] received proper treatment" and "had [she] been told of the Hepatitis C positive result before 2014," she "could have avoided these . . . medical conditions." *Id.* at 38. Blackford also transmitted hepatitis to her husband.

[7] At the time of the alleged malpractice, Welborn was a qualified provider under the Indiana Medical Malpractice Act and had filed the required proof of financial responsibility and paid the required surcharge to the IDOI. *See* Appellant's App. Vol. II p. 46. This financial responsibility took the form of a

malpractice liability insurance policy with ProAssurance Indemnity Company, Inc. ("ProAssurance"), for coverage up to $250,000.00 per occurrence. *Id.*

[8] Upon discovering that the 2003 test results had not been accurately disclosed, Blackford filed a complaint against Welborn for medical malpractice with the IDOI on March 13, 2015. The case was reviewed by a Medical Review Panel[4] and was then filed in the trial court on April 27, 2018.

[9] On February 19, 2019, Welborn filed a motion for summary judgment alleging that, because Blackford's claim was filed over five years after Welborn's business trust dissolved, the claim is time barred by the IBTA's nonclaim statute, Indiana Code section 23-5-1-11. Blackford filed a motion for partial summary judgment on March 21, 2019, arguing that Welborn was equitably estopped from relying on the five-year claim limitation because Welborn's fraudulent concealment prevented her discovery of the claim within that time frame.

[10] A hearing on both motions was held on June 4, 2019. The next day, the trial court issued an order granting Welborn's motion and denying Blackford's motion. On August 2, 2019, Blackford requested that the July 5 order be made

---

[4] Blackford states in her brief that the Medical Review Panel determined that Welborn committed medical malpractice, but the panel's conclusions are not included in the record on appeal, so we have no way of knowing what, precisely, was determined.

final and appealable, which the trial court granted on August 12, 2019. Blackford now appeals.

# Discussion and Decision

In pertinent part, Blackford argues that the five-year nonclaim limitation imposed by Indiana Code section 23-5-1-11 should be tolled because Welborn's fraudulent concealment prevented her from discovering she had a cause of action within the five-year period.

# I. Standard of Review

Our standard of review for summary judgment is well established:

> We review a trial court's order granting summary judgment de novo. And we apply the same standard as the trial court: summary judgment is appropriate only where the moving party demonstrates there is no genuine issue of material fact and he is entitled to judgment as a matter of law. If the moving party carries his burden, the non-moving party must then demonstrate the existence of a genuine issue of material fact in order to survive summary judgment. Just as the trial court does, we resolve all questions and view all evidence in the light most favorable to the non-moving party, so as to not improperly deny him his day in court.

*Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1259 (Ind. 2014) (internal citations omitted). "A genuine issue of material fact exists where facts concerning an issue that would dispose of the issue are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on

such an issue." *Robbins v. Trustees of Ind. Univ.*, 45 N.E.3d 1, 6 (Ind. Ct. App. 2015).

## II. Fraudulent Concealment and the IBTA

Blackford's primary argument on appeal is that the five-year nonclaim limitation in the IBTA is not enforceable to bar her claim where Welborn, as the entity benefitting from the statute, committed fraud that prevented Blackford from discovering that she had a cause of action within the five-year period.

The difference between a statute of limitations and a nonclaim statute (or a statute of repose) is a critical one in this case. Our Supreme Court has explained this distinction as follows:

> [A] nonclaim statute . . . grants to every person having a claim of any kind or character against a [defendant], the right to file the same in the court having jurisdiction thereof and have the same adjudicated, provided such claim is filed within the time specified in the statute. Unless such claim is filed within the time so allowed by the statute, it is forever barred. The time element is a built-in condition of the said statute and is of the essence of the right of action. Unless the claim is filed within the prescribed time set out in the statute, no enforceable right of action is created.
>
> While such statutes limit the time in which a claim may be filed or an action brought, they have nothing in common with and are not to be confused with general statutes of limitation. The former creates a right of action if commenced within the time prescribed by the statute, whereas the latter creates a defense to an action

> brought after the expiration of time allowed by law for the bringing of such an action.

*Estate of Decker v. Farm Credit Servs. of Mid-Am., ACA*, 684 N.E.2d 1137, 1138-39 (Ind. 1997) (first alteration in original) (internal quotations omitted) (quoting *Donnella v. Crady*, 135 Ind. App. 60, 185 N.E.2d 623 (1982)).

[15] Welborn moved for summary judgment, and the trial court granted its motion, on the basis that Blackford's claim against Welborn was filed after the IBTA's five-year nonclaim limitation had expired. In response, Blackford filed a motion for partial summary judgment, arguing that the five-year limit should be tolled where Welborn had committed fraudulent concealment and that Welborn should be equitably estopped from invoking the nonclaim statute to benefit from its own fraud. The relevant inquiry, then, is two-fold: first, whether the IBTA's nonclaim statute may be tolled in cases of fraudulent concealment; and second, if so, whether the designated evidence conclusively demonstrates that Welborn committed fraudulent concealment, thereby tolling the nonclaim limitation period.

### The IBTA's Nonclaim Statute

[16] When a business trust authorized by the IBTA has surrendered its authority to transact business, the Act imposes a five-year period wherein the defunct business trust must continue to defend any claims filed against it:

> (a)    Any business trust, domestic or foreign, which has obtained authority under this chapter to transact business in Indiana may surrender its said authority at any time . . . .

(b)     During a period of five (5) years following the effective date of such withdrawal, the business trust shall nevertheless be entitled to convey and dispose of its property and assets in this state, settle and close out its business in this state, and perform any other act or acts pertinent to the liquidation of its business, property, and assets in this state, and to prosecute and defend all suits filed prior to the expiration of said five (5) year period involving causes of action prior to the effective date of such withdrawal or arising out of any action or transactions occurring during said five (5) year period in the course of the liquidation of its business, property, or assets.

I.C. § 23-5-1-11.

[17]     Blackford does not dispute, and in fact concedes, that she did not file her claim against Welborn within the five-year period imposed by the IBTA.[5] Rather, she asserts that the IBTA's five-year limitation is tolled due to Welborn's alleged fraud in its inaccurate disclosure of Blackford's hepatitis test results. In response, Welborn emphasizes the plain language of the statute and its mere nature as a nonclaim statute or statute of repose as "set[ting] a distinct, outside limit as to when *any* claim involving a business trust which is being dissolved can be filed," and that the five-year deadline "is based upon the surrendering of the right to transact business, and not upon the occurrence of the facts underlying a claim." Appellee's Br. p. 16 (emphasis in original).

---

[5] The five-year window from when Welborn surrendered its authority to transact business ended on June 30, 2014. Blackford then filed her claim with the IDOI on March 13, 2015.

[18]     Whether fraud may toll the five-year nonclaim filing period under the IBTA is an issue that has not yet been specifically addressed by our courts, though we have discussed the effect of fraud on other nonclaim statutes. "We have said before that fraud may toll the filing period of a non-claim statute." *Alldredge*, 9 N.E.3d at 1264 (citing *Gayheart v. Newnam Foundry Co.*, 271 Ind. 422, 425, 393 N.E.2d 163, 166 (1979)). In *Alldredge*, our Supreme Court considered whether fraudulent concealment could serve to toll the running of the statute of limitations as well as the statutory filing period for the nonclaim statute under the Wrongful Death Act. The Court held that the fraudulent concealment statute, Indiana Code section 34-11-5-1, applied to toll the Wrongful Death Act's two-year filing period under its nonclaim statute if the necessary factual showing is made to demonstrate fraudulent concealment. In reaching that conclusion, the Court considered precedent regarding fraudulent concealment's effect on tolling the Wrongful Death Act's statute of limitations, *see Guy v. Schuldt*, 236 Ind. 101, 138 N.E.2d 891 (1956), and estoppel due to fraud as applied to the nonclaim statute in the Federal Employer's Liability Act, *see Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231 (1959). The Court explained its reasoning, in part, as follows:

> Taken together, *Guy* and *Glus* make clear that neither an ordinary statute of limitation nor a temporal condition precedent [a nonclaim limitation] will bar a plaintiff's claim when the delay in filing was due to the tortfeasor's fraud. *Guy* tells us that if the legislature intends to create a time limitation that will *not* be tolled by fraud, it must do so expressly. *Glus* adds that courts should *presume fraud will toll any time period*, be it statute of

limitation or condition precedent, and the burden is on the tortfeasor to demonstrate contrary legislative intent.

*** 

Public policy considerations further bolster our conclusion. Were we to hold otherwise, we would be incentivizing fraud and thus thwarting the obvious purpose of the Fraudulent Concealment Statute. And our decision today is consistent with that of courts in other jurisdictions, which have routinely found fraud may toll a statutory filing period even when it is a condition precedent to the existence of the claim rather than a statute of limitation.

*Alldredge*, 9 N.E.3d at 1263-6 (emphases added).

[19] Here, we are faced with a similarly novel issue as the Court in *Alldredge*—whether exceptions for fraud under applicable statutes of limitations and other nonclaim statutes may be extended, for the first time, to a specific nonclaim statute. We likewise find that the same logic our Supreme Court employed in *Alldredge* applies seamlessly here to similarly allow tolling the IBTA's nonclaim limitation statute in cases of fraudulent concealment.[6]

[20] As an initial matter, we note the absence of any language in the IBTA expressly indicating that the time limitation contained therein should *not* be tolled by fraud. *See Alldredge*, 9 N.E.3d at 1264. As our Supreme Court wrote in *Guy*,

---

[6] Here, however, the only real difference is that the relevant reference point for tolling the statute of limitations for medical malpractice claims comes from the common law, rather than Indiana's fraudulent concealment statute.

when determining whether an equitable exception to a statutory time limit may be found in cases of fraud, be it a statute of limitation or repose, we will not presume that the legislature intended to prevent such an exception unless explicitly stated in the statute itself:

> The question here is not, are there allegations of fraudulent concealment in the complaint, but rather, is the party entitled to plead and prove such a defense (if the facts exist) against the statute of limitations? *Fraud vitiates anything*. Courts will not uphold fraud, or presume the Legislature intended to do so by allowing one in a confidential relationship to conceal an injury done another until the statute of limitations has run. The language of the statute should be so plain that there is no question as to its meaning if the Legislature intends to give a wrongdoer the advantage and benefit of his fraudulent concealment of an injury done another.

*Guy*, 236 Ind. at 111, 138 N.E.2d at 896 (emphasis added).

[21] Welborn is correct to the extent that it emphasizes the plain text of the IBTA, and that it states simply that a defunct business trust will not be obligated to defend "any" claims against it after the expiration of the five-year period. I.C. § 23-5-1-11(b). But as *Guy* and *Alldredge* clarify, the relevant inquiry is not whether the plain language of the statute expressly allows for an exception due to fraud, but rather, whether the statute expressly forbids one. Here, the IBTA language shows no indication that the legislature intended to prevent traditional equitable principles regarding fraud from applying to the time constraints set in section 23-5-1-11(b), and it is not our province to read such a prohibition into the statute when it otherwise does not exist.

[22] Next, Blackford argues that the same reasoning that justifies tolling the statute of limitations in cases of fraudulent concealment also applies to nonclaim statutes in cases of fraud, and thus justifies an exception to the application of the IBTA's five-year claim limitation period. *See, e.g.*, *Alldredge*, 9 N.E.3d at 1261-63 (applying equitable principles governing fraud's ability to toll the statute of limitations to nonclaim statutes). We agree.

[23] The doctrine of fraudulent concealment is an equitable remedy that bars a defendant from asserting the statute of limitations as a defense if the defendant "prevented a plaintiff from discovering an otherwise valid claim, by violation of duty or deception." *Garneau v. Bush*, 838 N.E.2d 1134, 1142 (Ind. Ct. App. 2005). Upon a sufficient factual showing, fraudulent concealment may toll the running of the two-year limitation period in medical malpractice cases[7] until either (1) the physician-patient relationship is terminated, or (2) the patient discovered, or in the exercise of reasonable diligence should have discovered, the physician's alleged malpractice.[8] *Id.* at 1141; *see also* Ind. Code § 34-11-5-1 ("If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action.").

---

[7] Ind. Code § 34-18-7-1(b).

[8] Regardless of whether the fraudulent concealment is active or passive, "[u]nder either strand of the doctrine, the patient must bring his or her claim within a reasonable period of time after the statute of limitations begins to run." *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 698 (Ind. 2000).

[24] The equitable principles and exceptions for fraud that serve to toll the applicable statute of limitations justify a parallel exception for the IBTA's nonclaim statute. To allow otherwise would permit a now-defunct business trust to fraudulently conceal information that would reveal a cause of action until the five-year nonclaim limit had expired, at which point the former business entity would be off the hook—which is precisely the type of incentive the doctrine of fraudulent concealment, as applied to statutes of limitation, is intended to prevent.

[25] Welborn argues that *Alldredge* is "inapposite" here because it deals with the Wrongful Death Act, rather than a medical malpractice claim or a claim against a defunct business trust. Appellee's Br. p. 17. But when *Alldredge* was decided, the specific question of whether the Wrongful Death Act's nonclaim statute could be tolled by fraud was a novel one, previously unaddressed by our courts—the same position we find ourselves in today with regards to the IBTA's nonclaim statute. As a result, the *Alldredge* Court relied on decisions involving fraud tolling other nonclaim statutes, as well as fraud's ability to toll statutes of limitation and general public policy considerations, which justified the Court's decision to explicitly extend estoppel due to fraud to the Wrongful Death Act's nonclaim statute. In conducting a similar path of analysis today, we find that *Alldredge* provides ample support for allowing the IBTA's nonclaim limitation to be tolled in cases of fraudulent concealment.

[26] Welborn also relies heavily on cases in which Indiana courts interpret Illinois law for the proposition that "at the end of the five-year period, the trust ceases

to exist and is no longer a recognized entity; it can bring no claims, nor can it have *any* claims brought against it." Appellee's Br. p. 15 (emphasis added).[9] But we do not need to turn to cases interpreting Illinois law to reach such a conclusion, as the language of section 23-5-1-11(b) clearly states as much. Instead, what Blackford argues, and what Welborn fails to provide any persuasive counterargument for, is that an equitable exception to this limitation for estoppel due to fraud should be allowed under the IBTA as it has been with regards to other nonclaim statutes in Indiana.

### *Fraudulent Concealment*

[27] Importantly, however, in order for this exception to apply, there must be a sufficient factual demonstration of fraudulent concealment. *See Alldredge*, 9 N.E.3d at 1264. Blackford argues that Welborn committed fraudulent concealment when it failed to disclose to her the correct results of her hepatitis test in 2003 and continued treating her and seeking the underlying cause for her Lichens Planus as if she was negative for hepatitis.

[28] Fraudulent concealment may be either active or passive. A physician's actions amount to active concealment if they are "calculated to mislead and hinder" a

---

[9] Welborn also quotes "survives" and "winds up" as language appearing in the statute—specifically, that "[t]he IBTA establishes a five (5) year period, during which the trust entity 'survives,' in order to 'wind up' its affairs," appellee's br. p. 15, and cites to Indiana Code § 23-5-1-11(b) as the source of that language. However, neither of these phrases appear in the statute, whether in subsection (b) or otherwise. Although this difference in language is ultimately trivial as it relates to our decision in this case, we nonetheless advise parties who wish to make arguments regarding statutory interpretation to take care to cite the correct statutory language in the first place.

claimant using ordinary diligence from obtaining information, or otherwise prevent inquiry and investigation. *Hughes v. Glaese*, 659 N.E.2d 516, 521 (Ind. 1995) (internal quotations omitted) (quoting *Keesling v. Baker & Daniels*, 571 N.E.2d 562, 565 (Ind. Ct. App. 1991)). Passive or constructive concealment, on the other hand, "may be merely negligent and arises when the physician does not disclose to the patient certain material information." *Garneau*, 838 N.E.2d at 1142-43. "'The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud.'" *Id.* at 1143 (quoting *Hopster v. Burgeson*, 750 N.E.2d 841, 857 (Ind. Ct. App. 2001)).

[29] Here, Blackford attested in a deposition that she was told by a Welborn employee in 2003 that the results of her test for hepatitis were negative. Appellant's App. Vol. II p. 28-29. She also stated that it was not until 2014, when her health significantly worsened without explanation, that her new doctor had reason to conduct a new test that showed Blackford was positive for hepatitis; this 2014 test prompted Blackford to seek a copy of the Welborn records containing the results of the 2003 test, which actually stated that the 2003 test showed she had been "highly reactive" and positive for hepatitis, not negative. *Id.* at 29.[10]

---

[10] Because Blackford has not included her motion for partial summary judgment with her designated evidence on appeal, we are unable to confirm that she designated her deposition as evidence in support of her motion. But Welborn concedes as much in its brief, so we will assume that the deposition was designated to the trial court. Appellee's Br. p. 20.

[30] Welborn argues that this testimony is insufficient to prove fraudulent concealment—namely, that there is a lack of admissible evidence showing Blackford was provided false information with regards to the original test results in 2003. Welborn claims these statements by Blackford about what a Welborn employee told her regarding the test results are inadmissible hearsay, and further, that there is no evidence besides this same testimony indicating that the record obtained from Welborn in 2014 differed from what was shared in 2003. But under Indiana Evidence Rule 801(d)(2), statements by an opposing party, made by or through its agent or employee, are not hearsay—and that is precisely what Blackford offered here in her deposition. *See also Reeder v. Harper*, 788 N.E.2d 1236, 1241-42 (Ind. 2003) (holding that to be admissible, the evidence on summary judgment need not be in a form that would be admissible at trial, so long as the actual substance of the evidence would be admissible). Welborn has designated no evidence contradicting this statement besides generally alleging that it is inadmissible hearsay.[11]

[31] Further, Blackford testified that she continued seeking medical treatment for her Lichens Planus from Welborn, and later from a new provider, and never exhibited symptoms of hepatitis nor was given treatment for hepatitis as the potential underlying cause of the skin condition. In fact, per Blackford's

---

[11] With regards to the evidence of the actual test results, Blackford testified in her deposition about her discovery of the results in 2014, but also argues in her reply brief that the actual report with the 2003 test results would be admissible evidence on this matter as well. We are unable to discern whether Blackford designated the 2003 test result report as evidence to the trial court.

testimony, she was administered steroid medications that are contraindicated for a patient who has hepatitis—further suggesting that Blackford and her physicians, both at Welborn and later on, relied on the assumption that the test was negative.

[32] Therefore, Blackford's continued efforts to seek treatment for Lichens Planus and determine a cause of the condition show that she investigated her condition following the termination of the physician-patient relationship with Welborn in a reasonably diligent manner. Blackford states the issue here well: "the issue is not whether Welborn's misrepresentation prevented inquiry. It did not. What it did block was [Blackford's] inquiry from being effective." Appellant's Br. p. 24. To expect more of her in this scenario would effectively require that every patient in Blackford's position—having received test results from a physician and then being treated for a condition based on those test results—continually question the accuracy of the information disclosed by their doctors and to "obtain their medical records to determine whether their physicians might have misled them." Appellant's Reply Br. p. 11; *cf. Biedron v. Anon. Physician 1*, 106 N.E.3d 1079, 1092, 1096, 1099 (Ind. Ct. App. 2018) (finding that three separate plaintiffs, in a consolidated medical malpractice appeal, each failed to demonstrate fraudulent concealment because each failed to establish that the concealment "prevented [the plaintiff] from investigating" the medical condition at issue).

[33] As such, the evidence is undisputed that Welborn failed to disclose to Blackford that her hepatitis test was positive and, in fact, told her precisely the opposite.

Based on this record, we hold as a matter of law that Welborn fraudulently concealed—at the least, passively; at the worst, actively—material medical information from Blackford.

[34] In sum, we hold that where there is a sufficient factual demonstration of fraudulent concealment, such concealment equitably estops the fraudulent party from invoking the five-year nonclaim limit in the IBTA to time-bar a claim and thereby benefit from its own fraud. And though this is a case of first impression as it applies to the IBTA specifically, "in so holding, we break very little new ground." *Alldredge*, 9 N.E.3d at 1264. Here, when Welborn's motion for summary judgment established that Blackford's claim was filed after the five-year nonclaim limit had expired, the burden shifted to Blackford to establish that there was, in fact, a genuine issue of material fact as to whether her claim was time-barred by the IBTA. Blackford then carried this burden when she alleged in her motion for partial summary judgment that Welborn committed fraudulent concealment when it allegedly gave her inaccurate test results in 2003 and that fraudulent concealment must estop enforcement of the five-year limit. Welborn did not designate any evidence disputing Blackford's version of

events.  Therefore, the evidence regarding fraudulent concealment is undisputed.[12]

[35]     As such, we find that Blackford successfully demonstrated that (1) because an equitable exception for fraudulent concealment applies to the IBTA's nonclaim statute, it was erroneous for the trial court to grant Welborn's motion for summary judgment on this basis; and (2) the undisputed evidence in the record establishes as a matter of law that Welborn committed passive fraudulent concealment, which does, in fact, prevent application of the five-year limit under the IBTA, rendering denial of Blackford's motion for partial summary judgment inappropriate. Therefore, we reverse the trial court's order and remand with instructions to enter partial summary judgment in Blackford's favor on this issue.[13]

# Conclusion

[36]     In sum, we find as a matter of law that Welborn fraudulently concealed Blackford's positive hepatitis test result. This act tolled the five-year nonclaim

---

[12] Further, we note that Blackford promptly filed her proposed complaint with the IDOI after discovering the alleged malpractice—Blackford learned of the true 2003 test results in November 2014, and filed her proposed complaint a reasonable amount of time thereafter in March 2015. *See, e.g.*, *Boggs*, 730 N.E.2d at 698-99 (finding, in a case where the plaintiff alleged that passive fraudulent concealment tolled the statute of limitations, that even assuming the latest possible trigger date for the tolled running of the statute of limitations, the plaintiff "would have only a reasonable time" beyond that date to file her claim; and holding that waiting twenty-two and one-half months thereafter to file was unreasonable).

[13] Blackford devotes much of her brief to a second argument that the two-year statute of limitations for medical malpractice suits should be tolled to the date she discovered Welborn's fraudulent concealment. She acknowledges, however, that Welborn did not raise the statute of limitations as a defense. Given that it was not an issue before the trial court on summary judgment, we decline to address it here.

limitation such that Blackford's complaint was timely filed under the IBTA. Accordingly, the trial court erred by granting Welborn's summary judgment motion and denying Blackford's partial summary judgment motion.

[37] The trial court's order is reversed and remanded (1) with instructions to enter partial summary judgment in favor of Blackford on the issue of the timeliness of the complaint under the IBTA; and (2) for further proceedings.

May, J., concurs.
Brown, J., dissents with a separate opinion.

| | |
|---|---|
| Teresa Blackford, | Court of Appeals Case No. |
| *Appellant-Plaintiff*, | 19A-CT-2054 |
| v. | |
| Welborn Clinic, | |
| *Appellee-Defendant*. | |

**Brown, Judge, dissenting.**

[38] I respectfully dissent and would affirm the trial court's grant of Welborn's motion for summary judgment. At oral argument, Blackford's counsel conceded that Blackford was not alleging there was active fraud and asserted only constructive fraud. Oral Argument at 5:56-6:04. Blackford's counsel also argued for an abolition of the distinction between active and constructive fraud. *Id.* at 5:50-5:57.

The Indiana Supreme Court has previously discussed a distinction between active and constructive concealment in the physician-patient context. In *Hughes v. Glaese*, the Court "decline[d] to abolish the distinction between constructive and active fraudulent concealment." 659 N.E.2d 516, 521 (Ind. 1995). Later, in *Boggs v. Tri-State Radiology, Inc.*, the Indiana Supreme Court stated:

> If the concealment is active, it is tolled until the patient discovers the malpractice, or in the exercise of due diligence should discover it. If the concealment is constructive, in this case by reason of an ongoing duty arising from the continuing physician-patient relationship, the statute of limitations is tolled until the termination of the physician-patient relationship, or, as in the active concealment case, until discovery, whichever is earlier.

730 N.E.2d 692, 698 (Ind. 2000) (citing *Hughes*, 659 N.E.2d at 519), *reh'g denied*. The Court in *Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257 (Ind. 2014), did not indicate it was overruling *Boggs* or *Hughes*.

The majority notes that the record does not reveal when, precisely, the patient-physician relationship between Blackford and Welborn ended, and assumes that, at the latest, it ended the day Welborn surrendered its authority to transact business on June 30, 2009. Blackford concedes that she did not file her claim against Welborn within the five-year period imposed by the IBTA. Based upon *Boggs* and *Hughes* and Blackford's failure to file her claim until after the five-year period, I would affirm the trial court's entry of summary judgment in favor of Welborn.